Emanuel KEMP, Jr., Appellant, ·

v.

The STATE of Texas, Appellee.

No. 70403.

Court of Criminal Appeals of Texas,
En Banc.

· Sept. 16, 1992.

Rehearing Denied Dec. 9, 1992.

John C. Beatty, Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, J. Rex Bennett, Gary Medlin and Bob Gill, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for State.

OPINION

CAMPBELL, Judge.

Appellant, Emanuel Kemp, Jr., was convicted of capital murder. Tex.Penal Code § 19.03(a)(2). At the punishment phase of appellant's trial, the jury answered affirmatively the special issues set forth in Article 37.071(b) of the Texas Code of Criminal Procedure.[1] The trial judge then sentenced appellant to death as required by Article 37.071(e). Direct appeal to this court is automatic. Tex.Code Crim.Proc. art. 37.-071(h).

Appellant raises twenty-one points of error. Eleven of appellant's points complain of error in the voir dire process. Appellant specifically challenges: (1) the sua sponte excusal of a "disqualified" (i.e., challengeable) venireperson; (2) the sua sponte excusal of a venireperson after his acceptance by both sides and swearing in; (3) the refusal to excuse for cause a venireperson who was racially biased against appellant; (4) the refusal to excuse for cause a venireperson incapable of considering the full range of punishment; (5) the granting of the State's challenge for cause of two venirepersons whose views on the death penalty did not disqualify them; (6) the refusal to excuse for cause a venireperson who would require a diminished burden of proof before assessing death; (7) the granting of the State's challenge for cause of a venireperson for the alleged inability to distinguish between "intentionally" and "deliberately"; (8) the refusal to excuse for cause two venirepersons who had already reached conclusions about one element of the offense, thereby diminishing the State's burden of proof; and (9) the refusal to excuse for cause a venireperson who stated she had a bias against appellant. Appel-

---

1. At the time of Appellant's trial, Tex.Code Crim. Proc. art. 37.071(b) provided:

On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:
(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

lant also alleges *Batson* error during the voir dire process.

Appellant asserts various error during his trial, as follows: (1) Judge Don Leonard violated the Code of Judicial Conduct by failing to recuse himself on the basis that he was the judge who initially signed appellant's search and arrest warrants; (2) Judge Joe Drago erred by failing to recuse Judge Leonard, in that Judge Leonard was biased against appellant; (3) the trial judge erred in admitting two extraneous offenses because the State never "linked" appellant thereto; and (4) the trial judge erred by refusing to grant a mistrial after one of the State's witnesses violated a motion in limine by referring to appellant's prior felony conviction.

Appellant's remaining points of error challenge the constitutionality of the capital punishment statute. He specifically argues that: (1) the second special punishment issue is unconstitutionally vague and decreases the State's burden of proof to only "probable"; and (2) appellant's sentence was unconstitutional under *Penry v. Lynaugh.* We will affirm.

Appellant was convicted of the intentional murder of Johnnie Gray, committed during the course of aggravated sexual assault against Ms. Gray. Because appellant does not challenge the sufficiency of the evidence, either at guilt-innocence or at punishment, no further explication of the facts is necessary.

## VOIR DIRE ERROR

■ In point of error two, appellant alleges that: "The Court erred in its sua sponte excusal of a disqualified [i.e., challengeable] venireman, Dorothy Williams." The record indicates that when venireperson Williams was called for individual voir dire, she asked to make a statement to the trial court. At that time, the venireperson testified that she cared for six emotionally disturbed foster children, who required medication and round-the-clock supervision. Over defense counsel's objection, the trial judge excused the venireperson on the ground that, although otherwise qualified, the circumstances indicated that jury service would cause an undue hardship for her.

Appellant argues that the trial judge's actions constituted the improper sua sponte exclusion of a disqualified venireperson (i.e., one challengeable for cause), which constitutes error under *Green v. State,* 764 S.W.2d 242, 246 (Tex.Cr.App.1989) and *Nichols v. State,* 754 S.W.2d 185 (Tex.Cr. App.1988). Appellant claims that the trial judge excused venireperson Williams for cause, under Tex.Crim.Proc.Code art. 35.16, based on the nonenumerated ground that she was incapable or unfit for service. See *Nichols,* supra at 193–194.

The State characterizes the actions of the trial judge as falling within the discretionary authority afforded him under Tex. Crim.Proc.Code art. 35.03, which provides in relevant part:

> (1) Except as provided by Sections 2 and 3 of this article, the court shall then hear and determine excuses offered for not serving as a juror, and if the court deems the excuse sufficient, the court shall discharge the juror or postpone the juror's service to a date specified by the court.

The State asserts that the venireperson was not dismissed for incapacity or unfitness under Article 35.16; rather, she was excused because service would pose an onerous burden on her. Consequently, argues the State, under this Court's decision in *Harris v. State,* 784 S.W.2d 5, 19 (Tex. Cr.App.1989), the trial court's sua sponte excusal of venireperson Williams, pursuant to Article 35.03, was not error, absent a clear abuse of discretion. See also, *Johnson v. State,* 773 S.W.2d 322 (Tex.Cr.App. 1989).

■ In our recent decision in *Butler v. State,* 830 S.W.2d 125 (Tex.Cr.App.1992), we held that, pursuant to Article 35.03, a trial judge has broad discretion in excusing prospective jurors on any proper basis, either with or without the prompting of counsel. Regarding the excusal of venireperson Williams, the record clearly indicates that the trial judge was relying on his inherent authority under Article 35.03, and

not on Article 35.16.[2] Because the trial judge's decision to excuse venireperson Williams for personal hardship was an appropriate exercise of his discretionary authority under Article 35.03, we hold that he did not abuse his discretion in excusing Williams. Appellant's point of error two is overruled.

■ In point of error number three, appellant asserts: "The trial court erred in excusing sua sponte venireman Gale Keith Maenius after he had been accepted by both sides and sworn as a juror." The record reveals that on March 31, 1988, venireperson Maenius was brought in for individual voir dire. After a few admonitory remarks, the trial judge asked the venireperson if his jury service and sequestration would cause him "any unusual or unique problems." The venireperson answered in the negative. After being questioned at length by both the defense and State, the venireperson was accepted by both sides. He was then sworn as a juror by the trial court.

Some two weeks later, on April 11, 1988, the trial judge advised both sides of "the possible inability of Juror No. 6 to serve, Mr. Maenius." Later that day a hearing was conducted, at which juror Maenius testified that the previous week his wife was scheduled to have a biopsy done on April 21, 1988. The juror stated that if the biopsy was malignant, his wife would then undergo further surgery and radiation treatment. He also testified that during the time of his wife's incapacitation, he would have to care for their eleven- and twelve-year-old children, as they had no family in the geographic area. Juror Maenius further testified that his ability to be a fair juror would be impaired if he were required to serve prior to his wife's surgery, but that he could be fair if the trial were to commence after the surgery. After hearing this testimony, the trial judge stated he would take Mr. Maenius' request to be excused under advisement.

Four days later, on April 15, 1988, the trial judge indicated that he was going to excuse the juror because of the exigent circumstances:

> [L]ooking at the calendar, it appears that about the time we will have this jury is about the time his wife will have exploratory surgery and a biopsy. And I feel like that to continue carrying him as a juror in that case, with that sort of problem on he and his wife and the small children, that I am going to prevent the interruption of this trial and for the good order of justice to discharge G.K. Maenius, Juror No. 6.

Appellant objected to the juror's dismissal and requested a mistrial. The trial court denied this request; however, "in an abundance of caution," the trial court awarded appellant three additional peremptory strikes.

Relying on *Nichols v. State,* 754 S.W.2d 185 (Tex.Cr.App.1988), appellant argues that the trial court erred in sua sponte excusing a disqualified juror under Tex. Crim.Proc.Code art. 35.16. Specifically, appellant asserts that: "The parties—and not a trial judge—have exclusive power to cause the exclusion of a "disqualified" but seated and sworn juror and action by a trial court that usurps this authority is error." The State counters by asserting that the trial judge's excusal of this venireperson was proper under Tex.Crim.Proc.Code art. 35.03.

■ Upon close examination, it is clear from the record that the trial judge based his decision to excuse juror Maenius on the discretionary authority inherent in Article

2. In reaching this conclusion we are persuaded by the fact that nowhere in the record does the trial judge refer to any specific statute on which he based his decision. Rather, he merely excused venireperson Williams on the basis that jury service "would be an undue hardship on her and the children"—a rationale consistent with excusals granted under Article 35.03 and manifestly inconsistent with a proper disqualification under Article 35.16. Because it is well-settled that a trial judge's decision will not be disturbed on appeal if it is correct on any applicable theory of law, the trial judge's otherwise proper excusal of venireperson Williams (i.e., under Article 35.03) will not be overturned for mere failure to cite the appropriate rule. See *Calloway v. State,* 743 S.W.2d 645, 652 (Tex.Cr. App.1988); *O'Neal v. State,* 491 S.W.2d 130, 132 (Tex.Cr.App.1973).

35.03—not pursuant to Article 35.16.[3] As stated in our disposition of appellant's preceding point of error, the trial court has great latitude in granting excusals of prospective jurors under Article 35.03. See *Butler v. State,* supra. Given the fact that the commencement of appellant's trial was at hand and juror Maenius was apparently plagued with personal problems so exigent as to potentially inhibit his ability to concentrate on the trial, we hold that the trial judge's decision to excuse this juror under Article 35.03 was within his discretion.[4] Accordingly, appellant's point of error number three is overruled.

■ Appellant's fourth, fifth, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and sixteenth points of error all predicate error on an alleged abuse of discretion by the trial judge in ruling on the respective qualifications of certain venirepersons to serve as jurors in appellant's trial, pursuant to Tex.Crim.Proc.Code art. 35.16. As an initial matter, we note that previous cases from this Court have established that the appropriate analysis to be used by the trial court in ruling on the qualifications of potential jurors, is whether their views would prevent or substantially impair their duties as jurors to act in accordance with the trial judge's instructions and the oaths taken by the jury. *DeBlanc v. State,* 799 S.W.2d 701, 716 (Tex.Cr.App.1990), cert. de-

nied, —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); *Bell v. State,* 724 S.W.2d 780, 794 (Tex.Cr.App.1986), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

■ On appeal, we recognize that great deference must be given to the trial judge, who was in the best position to witness the responses of the prospective jurors and to evaluate their demeanor. In *Wainwright v. Witt,* 469 U.S. 412, 424–28, 105 S.Ct. 844, 852–54, 83 L.Ed.2d 841 (1985), the United States Supreme Court held:

[D]eterminations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of catechism. What common sense should have realized experience has proved: many veniremen cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully apply the law.... [D]eference must be paid to the trial judge who sees and hears the juror.... [T]he question

---

**3.** Although the trial judge failed to cite the applicable provision for his excusal of venireperson Maenius, it is apparent from the record that this excusal was predicated on the trial judge's authority under Article 35.03 to excuse prospective jurors for personal hardship such as arose in this instance. See *Butler v. State,* supra.

**4.** The fact that Mr. Maenius was individually sworn as a juror prior to his excusal has no bearing on our decision. As this Court's opinion in *Butler v. State,* 830 S.W.2d 125 (Tex.Cr.App.1992) makes clear, a trial court has the authority to excuse a juror for a proper basis, although sworn, at any point up to the time the jury has been sworn as a whole and impaneled:

We believe that when rendering an excuse under Article 35.03 a trial judge is not, as appellant suggests, limited to the period before questioning of the venire takes place. In order to provide the most efficient jury empanelment system possible, the judge *must* retain the ability to render an excuse in order

to rectify problems created by such changed circumstances as, e.g., a venireperson's sudden realization that an excuse applies to her or to new and unforeseen developments which would render venirepersons incapable of fairly considering the facts before them. To hold otherwise would hamstring trial judges in the exercise of their duties, and would hinder the selection of a fair and impartial jury. Furthermore, our Legislature has given no guidance regarding the timeframe in which a judge may excuse veniremembers under Article 35.03. As there is no indication that the Legislature intended to limit the trial judge's power of excusal solely to the period prior to *voir dire* questioning of the panel, and as the terms used do not imply a limitation prior to the seating of the jury, we will not judicially supply such a meaning. Thus the power to grant an excusal from jury service (pursuant to Article 35.03) inheres to the trial judge from the first assemblage of the array until the juror is, at last, seated. At 130–31 (citation omitted).

whether a venireperson is biased has traditionally been determined through voir dire culminating in a finding by the trial judge concerning the venireperson's state of mind. We also noted that such a finding is based upon a determination of demeanor and credibility that are peculiarly within the trial court's province. Such determinations are entitled to deference even on direct review.

See also, *DeBlanc v. State,* supra at 717.

We will reverse a trial court's ruling on these issues only when the record demonstrates a clear abuse of discretion. *Ransom v. State,* 789 S.W.2d 572, 582 (Tex.Cr. App.1989), cert. denied, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). We now turn to the merits of appellant's points of error to assess whether any of these demonstrates clear abuse of discretion by the trial judge.

Appellant's points of error number four, five, ten, twelve, thirteen, and sixteen assert that the trial judge erred in denying appellant's challenges for cause of venirepersons Oscar Sellers, Larry Black, Jr., Richard Peterson, Jr., Ralph Rygg, Rickey J. Wright, and Jenny Haniwalt based, respectively, on Sellers' racial bias against appellant, Black's inability to consider the full range of punishment, Peterson's admission that he would not hold the State to its burden of proof before assessing punishment at death, Rygg's and Wright's prior conclusions about an element of the offense, which thereby decreased the State's burden of proof, and Haniwalt's stated bias against appellant.

We first address appellant's fourth point of error, in which he asserts that the trial judge erred in denying appellant's challenge for cause of venireperson Sellers. The record reflects that, at the conclusion of Sellers' voir dire testimony, appellant challenged the venireperson for cause. This challenge was based on certain statements made by the venireperson, which appellant alleged constituted racial bias as a matter of law. After hearing arguments from both sides, the trial judge overruled appellant's challenge, whereupon appellant exercised a peremptory strike against venireperson Sellers. Appellant now contends the trial judge's ruling constituted reversible error. By contrast, the State argues that the error alleged by appellant, if any, was cured by the trial judge's subsequent granting of three additional peremptory strikes to appellant. We agree.

On appeal, it will not suffice for an appellant to show only that the trial judge erred in refusing a defense challenge for cause. The appellant must also demonstrate actual harm stemming from the improper denial of his challenge. The appropriate focus of any harm analysis in this context is whether the defendant was forced to leave an unwanted venireperson on the jury that he could otherwise have eliminated if he had not been forced earlier to exercise a peremptory challenge to remove a juror properly challenged for cause. See, e.g., *Cuevas v. State,* 575 S.W.2d 543, 544 (Tex.Cr.App.1978). Because of the requirement of actual harm, this Court has held that the wrongful denial of a defense challenge for cause is cured by granting the defense additional peremptory strikes. See, e.g., *Barber v. State,* 737 S.W.2d 824, 830 (Tex.Cr.App.1987); *Rector v. State,* 738 S.W.2d 235, 247 (Tex.Cr.App.1986).

In the instant case, after exhausting his peremptory strikes, appellant requested ten additional challenges. The trial judge, "in an abundance of caution," awarded appellant three additional peremptory strikes. Consequently, we conclude that by affording appellant three extra challenges, the trial judge effectively cured any error arising from his earlier denial of appellant's challenge for cause of venireperson Sellers. Appellant's fourth point of error is overruled.

In his fifth point of error, appellant contends that venireperson Black was unable to consider the full range of punishment and was thus disqualified as a matter of law. The testimony of venireperson Black indicates clearly that he was personally in favor of the death penalty in cases of "deliberate murder." On examination by appellant, the venireperson stated that if the jury were to find appellant guilty of

capital murder, then he would only consider the death penalty and not life imprisonment. However, later in the voir dire, on further examination by appellant, the venireperson stated that he had changed his mind and would consider the full range of punishment, since "I understand [the question] clearly now." The venireperson also testified that he would follow the instructions of the trial judge with respect to punishment and would answer one or more of the special issues "no" if the State failed to make its case. At the conclusion of the voir dire of venireperson Black, the trial judge held that, "once the rather complex issues of the law have been explained to this gentleman that he is honest, truthful and open and he now understands, and I find that he is qualified to serve on this jury."

Appellant argues that the venireperson's inability to consider the full range of punishment disqualified him under Tex.Crim. Proc.Code art. 35.16, which provides in relevant part:

(c) A challenge for cause may be made by the defense for any of the following reasons:

\* \* \* \* \* \*

2. That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, whether as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor.

As authority for his argument, appellant cites this Court to *Felder v. State*, 758 S.W.2d 760, 766 (Tex.Cr.App.1988), where we stated that:

The fact that a prospective juror states that he would answer the punishment questions truthfully to the best of his knowledge is not sufficient to prevent his disqualification where the voir dire examination, considered as a whole, discloses strong feelings which would prevent him from abiding by existing law or fairly considering the evidence.

In the instant case, just before the court terminated the voir dire examination, Johnson clearly indicated he could not take the oath or honestly say that parole would not enter into the process of answering special issue number two.

In its brief, the State concedes that venireperson Black's original answers show that he believed in the death penalty, even for cases of simple murder. However, the State premises its argument on the fact that, "when asked by both the judge and the prosecutor whether he could put aside his personal feelings and follow the law in assessing punishment, Mr. Black unequivocally stated that he would have no problem in doing so." Thus, the State concludes that whatever the venirepersons personal feelings, he could set them aside and fairly consider the special issues at the punishment phase of appellant's trial.

The State asserts that this case is more closely akin to our previous decisions in *Cordova v. State*, 733 S.W.2d 175, 182–84 (Tex.Cr.App.1987) (statements by one venireperson that "he wanted to fry the guy" and by another venireperson that defendant should be punished according to the Biblical adage "an eye for an eye, a tooth for a tooth" did not necessarily disqualify the venirepersons, absent a showing that they could not follow the law as given them by the trial court); see also, *Johnson v. State*, 773 S.W.2d 322, 328 (Tex.Cr.App. 1989); and *Rougeau v. State*, 738 S.W.2d 651, 658–59 (Tex.Cr.App.1987). We agree with the State. Venireperson Black's testimony reveals an ability to set aside any preconceived notions he might have had regarding capital punishment and answer the special issues according to the instructions of the trial judge. As such he was not absolutely disqualified from service.

As stated, supra, when reviewing the propriety of a trial judge's ruling on voir dire challenges, we recognize the need for appellate courts to defer to the trial judge who witnessed the demeanor of the venireperson. We will reverse such a decision only for clear abuse of discretion; i.e., only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. See *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Cr.App.1990) (op. on

reh'g). This is not such a case. Venireperson Black's answers, when considered in their entirety, clearly support the finding of the trial judge that the venireperson could follow the law, once it was explained to him, notwithstanding his personal feelings about capital punishment. Consequently, we hold that the judge did not abuse his discretion in overruling appellant's challenge for cause. Point of error number five is overruled.

We now turn to appellant's argument, raised in his tenth point of error, concerning the diminished burden of proof to which venireperson Peterson would have held the State. Upon examination by appellant, Peterson stated that once guilt had been determined and the jury had answered special issue number one in the affirmative, "then, at that point ... the death penalty is the proper punishment for that case." However, on further questioning, the venireperson unequivocally testified that he could answer special issue number two "no" if the State had not proved future dangerousness. In other words, the voir dire testimony reveals that notwithstanding his personal belief that guilt plus deliberateness was sufficient to warrant death, the venireperson would follow the law and vote "no" on the second special issue if the State had not met its burden. The venireperson stated he would do this, even though, at that point, "the law would not allow the Judge to sentence that person to the death penalty; they would have to get life in prison."

Appellant has not cited this Court to any authority that would suggest that a venireperson would be disqualified under these factual circumstances. The State argues that our decision in *Cordova,* supra at 184, is controlling. That is, once a prospective juror has shown that he can set aside his personal feelings and follow the trial judge's instructions, he is not disqualified as a matter of law. We agree. Based on the voir dire testimony of venireperson Peterson that he could answer "no" to special issue two if the evidence so-warranted, and relying on the analysis set forth in our disposition of appellant's preceding points

of error, we hold that the trial court did not abuse his discretion in refusing appellant's challenge for cause. Point of error ten is overruled.

Appellant's twelfth and thirteenth points of error assert that venirepersons *Rygg* and *Wright* should have been disqualified as a matter of law because both had already reached a conclusion regarding an element of the offense, thereby decreasing the State's burden of proof. The objectionable testimony of venireperson Rygg concerned his statements that (1) someone had certainly murdered Johnnie Gray, but that he did not know who, and (2) because the murder has "obviously occurred," the State should not have difficulty proving that a murder had actually been committed. The objectionable testimony of venireperson Wright concerned his statement that he "knew someone had died on the bus."

Appellant's argument centers on the fact that these two venirepersons had preconceived beliefs concerning the corpus delicti, which therefore diminished the State's burden of proof. The State points out that neither venireperson had any opinion about whether appellant had committed the murder, both had no opinion as to the guilt or innocence of appellant, both testified they would consider only the evidence that was presented at trial, and both testified that they would abide by the presumption of innocence given appellant at the beginning of the trial. Venireperson Rygg also stated that he would require the State to prove each element of the offense, and that he would specifically require the State to prove the occurrence of the murder beyond a reasonable doubt.

The fact that both of these venirepersons had some minimal media exposure to a case that apparently had been afforded some local notoriety is insufficient to subject them to excusal for cause. "Prior knowledge of a crime from the news media and community discussion is not sufficient grounds to require that a venireman be excused for cause. The sole question for determination is whether a juror can put aside prior knowledge and opinion and render an impartial verdict." *Cockrum v.*

*State,* 758 S.W.2d 577, 589 (Tex.Cr.App. 1988) (citations omitted). In the instant case, the entirety of the respective voir dire examinations reveals that both venirepersons were capable of discarding any preconceived conclusions they might have had and following the law as given to them by the judge. Thus, the trial judge did not abuse his discretion in overruling appellant's challenges for cause. Appellant's twelfth and thirteenth points of error are overruled.

██ Appellant's point of error sixteen alleges the trial judge erred in denying appellant's challenge for cause of venireperson Haniwalt, because of her alleged bias against appellant. Appellant's first contention is that venireperson Haniwalt's testimony demonstrated bias towards appellant as a matter of law because, when asked if pretrial publicity or other hearsay had caused her to form an opinion as to appellant's guilt, she replied: "Well, from what I have read and heard, I would say guilty."

When a venireperson has been shown to be in fact biased towards the accused, the venireperson must be excused when challenged: "When it appears that the feeling had by the proposed juror is really one of prejudice, and that it is directed toward the accused, it is not ordinarily deemed possible for such a juror to be qualified by stating that he can lay aside such prejudice." *Williams v. State,* 565 S.W.2d 63, 65 (Tex.Cr.App.1978).

██ Bias may be found to exist when a prospective juror demonstrates an inclination or predisposition towards one side or the other of a material issue of such consequence that it leads to the natural inference that the juror is unable to act with impartiality.[5] *Id.* at 853. Appellant argues that venireperson Haniwalt's statement "that the venireman believed this particular appellant was guilty before she heard any evidence whatsoever, certainly indicated 'an inclination toward one side of

an issue rather than to the other.'" We disagree.

When read in context, the statement of the venireperson is merely her opinion based on certain pretrial publicity to which she had been exposed. And the mere opinion of a venireperson concerning the guilt or innocence of an appellant does not, alone, necessarily give rise to a finding of bias as a matter of law:

> It has been the holding of this court that there is a fundamental distinction between prejudice on the part of a juror ... and the entertaining of an opinion.... [A] trial judge may hold a juror qualified who states that he can lay aside any opinion which he may have formed.

*Gonzalez v. State,* 169 Tex.Crim. 49, 331 S.W.2d 748, 749 (App.1960); see also, *Williams v. State,* 565 S.W.2d at 65. In the instant case, the venireperson did not testify to having a specific prejudice directed toward appellant based on personal knowledge, nor was she biased as a matter of law under the various rationales set forth in *Anderson v. State,* 633 S.W.2d 851 (Tex.Cr.App.1982). Because the mere expression of venireperson Haniwalt's opinion, based on pretrial hearsay and publicity, was not bias as a matter of law, the determination of whether or not she was biased as a matter of fact was a function of the trial judge's discretionary authority.

In undertaking this review of discretion, we rely on the totality of the voir dire. In addition to her initial statement that she had an opinion of appellant's guilt based on pretrial publicity, the State's voir dire examination of venireperson Haniwalt's elicited the following relevant statements:

(1) She could answer "no" to the special issues if the evidence so-warranted;

(2) She could consider the full range of punishment for lesser-included offenses;

(3) She did not personally know appellant or the victim;

(4) That she recalled hearing publicity about the case;

---

5. See *Anderson,* supra at 854, for an illustrative list of cases in which this Court has found bias

as a matter of law.

(5) She did not necessarily believe all that the media reported;

(6) Sometimes the wrong person is arrested for crimes;

(7) She would follow the law;

(8) She would be fair and impartial;

(9) She would follow the instructions from the trial judge;

(10) She would return a verdict of not guilty if she had a reasonable doubt as to any element the State was required to prove;

(11) She could base her decision on the evidence at trial—not on pretrial publicity she might have heard; and

(12) She would presume appellant's innocence unless proven otherwise.

When questioned by appellant, the venireperson maintained that she would be able to remain fair and impartial notwithstanding any pretrial information she might have heard:

Q: [BY APPELLANT] You said that you had some exposure to the media in this case, and I note on your information sheet that you do read the Star–Telegram, Fort Worth Star–Telegram.

A: [VENIREPERSON HANIWALT] Yes.

Q: Is that where you first heard of this case, by reading the Star–Telegram?

A: The news or the paper one. I don't know which one first.

Q: Okay. Can you remember—and it's important that you try, if you can remember anything that was said about what happened.

A: No, I really can't.

Q: Okay. Based on those things, do you have an opinion as of right now as to whether or not Emanuel Kemp is guilty or innocent of the offense charged?

A: *No, I don't have an opinion right now.*

Q: Earlier, upon questioning by [the State], you said that according to what you read that you could not vote not guilty. What did you mean by that?

A: Well, did I say that?

Q: Yes, ma'am.

A: *Well, I would have to hear all of the evidence before I could say guilty or not guilty, you know.*

\* \* \* \* \* \*

Q: [FURTHER VOIR DIRE BY THE STATE] And like I said, as we have all told you, there is [sic] not any right or wrong answers. You have seen something in the paper or heard something about this case, but you wouldn't want to be tried on what somebody says in the paper would you?

A: Oh, no.

Q: Now, can you set all that aside?

A: *I don't even remember what I read, to tell the truth.*

Q: Render your verdict—it's a commonsense thing. We want all the evidence that you use to make up your mind heard in this courtroom.

A: Yes.

Q: Can you do that?

A: I sure can.

Q: And forget about the rest of it?

A: Yes.

(Emphasis supplied).

In the instant case, we find that the voir dire examination of venireperson Haniwalt clearly supports the trial judge's ruling. Although this prospective juror initially indicated she had an opinion as to appellant's guilt, the voir dire as a whole reveals that she was capable of putting aside any opinion and rendering a fair verdict based only on the evidence adduced at trial.[6] Appellant's sixteenth point is overruled.

6. In support of his argument that the trial judge abused his discretion in finding that the above-recited testimony did not constitute bias, appellant cites this court to *Anderson v. State*, 633 S.W.2d 851 (Tex.Cr.App.1982), wherein the venireperson testified that because of her tangential acquaintance with the defendant and several State's witnesses, "I would be more biased," and "it would be difficult" to treat these witnesses as strangers. However, the venireperson also testified that she could abide by the instructions of the trial judge, determine the case according only to the evidence adduced at trial, and set aside her personal knowledge of the defendant and State's witnesses. *Id.* We thus concluded that the foregoing statements "sufficiently support the trial court's implicit finding that [the venireperson] was not disqualified for bias or

Appellant's eighth, ninth and eleventh points of error argue that the trial judge erred in granting the State's challenges for cause of venirepersons Matthew O'Connor, Jr., William Washington, and Carolyn O'Neal Taylor based, respectively, on venirepersons O'Connor and Washington's views on the death penalty and venireperson Taylor's inability to distinguish "intentionally" from "deliberately."

██ During voir dire examination prospective jurors O'Connor and Washington expressed marked ambiguity concerning their ability to follow the instructions given to them by the trial judge, who excused them pursuant to *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). In *Witt*, the Supreme Court held that a prospective juror may be excluded for cause when the juror's views on capital punishment are such that they would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."

██ In reviewing a decision by the trial judge to sustain a challenge for cause, the correct standard of review is whether the totality of the voir dire testimony supports the trial judge's implied finding of fact that the prospective juror is unable to take the requisite oath and to follow the law as given by the trial judge. *Goodwin v. State*, 799 S.W.2d 719, 731 (Tex.Cr.App. 1990). Moreover, when analyzing the propriety of a trial judge's decision to sustain a challenge for cause, the reviewing court must recognize that it is faced with only a cold record. Perforce, when undertaking an abuse of discretion review, the juror's bias need not be proven with "unmistakable clarity":

> Despite ... lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law ... this is why deference must be paid to the trial judge who sees and hears the jurors.

*Witt*, 469 U.S. at 425–26, 105 S.Ct. at 852–53; see also, e.g., *Andrews v. State*, 744 S.W.2d 40 (Tex.Cr.App.1987). Therefore, this Court grants considerable latitude to the trial judge, who had the opportunity to directly observe the demeanor of the venireperson. *Foster v. State*, 779 S.W.2d 845, 852 (Tex.Cr.App.1989).

This need for deference is especially critical when the reviewing court is faced with a record that demonstrates uncertainty in a venireperson's responses. In *Goodwin*, this Court held that:

> [W]hen faced with the ambiguous voir dire record of a venireperson who indicates both an inability to follow the law because of her views on the death penalty, and an ability to follow her oath and the law as instructed by the court, great deference should be given to the decision of the trial judge. A trial court's ruling on these issues should be reversed "only when the record shows a clear abuse of discretion."

799 S.W.2d at 731, quoting *Davis v. State*, 782 S.W.2d 211, 216 (Tex.Cr.App.1989); see also *Perillo v. State*, 758 S.W.2d 567, 576–77 (Tex.Cr.App.1988) (venireperson who repeatedly equivocated was properly excluded for cause); *Ransom v. State*, 789 S.W.2d 572, 582–83 (Tex.Cr.App.1989).

In the case at bar, the testimony of prospective jurors O'Connor and Washington revealed considerable uncertainty as to whether the jurors' feelings about capital punishment would render them incapable of adhering to their oath and applying the law as given to them by the trial judge. Consequently, we find and hold that, based on the totality of the voir dire testimony of both venirepersons, the decision of the trial judge in granting the State's challenge was within the zone of reasonable disagreement. Having found no abuse of discretion in the trial judge's ruling, we overrule points of error eight and nine.

██ With respect to appellant's argument that the trial judge erred in granting

prejudice." *Id.* Consequently, any similarity between *Anderson* and the instant case only supports our holding that the trial judge did not

abuse his discretion in finding the venireperson qualified.

the State's challenge for cause of prospective juror Taylor, we find that appellant has failed to preserve error on this point. During the State's initial examination of the venireperson, she unequivocally expressed that she could not distinguish between "intentional" and "deliberate." At the conclusion of her examination by the State, the prosecuting attorney requested that the venireperson be temporarily excused so that a matter could be discussed outside the presence of the venireperson. Appellant's counsel, in an apparent attempt to rehabilitate the venireperson, requested that he be allowed to question Ms. Taylor before she was excused. During the questioning by appellant's counsel, the venireperson again clearly stated that she could not tell the difference between intentionally and deliberately.

At the conclusion of appellant's examination of Ms. Taylor, the State challenged Ms. Taylor for cause, in that she could not distinguish between intentionally and deliberately, and thus would always answer special issue one "yes" once a guilty verdict was returned. The trial judge granted the State's challenge. Appellant did not object to the State's challenge or give any other indication that he was opposed to the trial judge's ruling. In fact, appellant's counsel said nothing during the State's challenge and the trial judge's ruling.

▪▪▪▪ It is well-settled that if an appellant fails to object when a venireperson is excused for cause, he or she may not subsequently challenge that ruling on appeal. *Purtell v. State*, 761 S.W.2d 360, 365 (Tex.Cr.App.1988). A proper objection must, at the least, inform the trial judge of the basis for the objection and afford her the opportunity to rule on it. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Cr.App. 1977). The objection should also afford opposing counsel the opportunity to address the merits of the objection in an attempt to remove it. *Id.*

In the instant case, appellant asserts that the fact that appellant's counsel sought to examine the venireperson, in an apparent attempt to rehabilitate her on the question of her inability to distinguish between in-

tentional and deliberate, was sufficient to preserve error, as "the court was on notice that the Appellant was resisting the State's efforts to exclude Venireman Taylor for cause." In support of this theory, appellant relies on this Court's recent decision in *Crane v. State*, 786 S.W.2d 338, 345 (Tex. Cr.App.1990). We find appellant's analogy erroneous.

In *Crane*, we held that error was preserved when, at the conclusion of his voir dire examination of the venireperson, defense counsel stated, "We'll submit the juror is qualified, Your Honor." Immediately following that statement, the State renewed its challenge for cause. The trial court then asked the venireperson if she would require premeditation in order to give a "yes" answer to special issue number one. When she answered the judge's question in the affirmative she was excused for cause. Under these facts, we held that error was preserved because: "It was apparent from the voir dire that the trial judge was informed that the appellant was resisting a challenge for cause."

Unlike the defense counsel in *Crane*, in the instant case appellant never clearly informed the trial judge that he was resisting the State's challenge for cause. It is apparent that he initially desired to question venireperson Taylor concerning her inability to distinguish between "intentional" and "deliberate"; however, at the conclusion of his voir dire examination, he made no statement concerning his belief that the venireperson was qualified, nor did he indicate that he resisted the State's challenge. Unlike in *Crane*, the trial judge in the case at bar was not made aware of any objections to the challenge for cause appellant might have had. Nor was the State given a chance to respond to any objections by appellant, in an attempt to clear them. Because appellant's conduct was not in the form of an objection, and because such conduct did not in substance serve to apprise the trial judge and opposing counsel of any objections to the trial judge's ruling, we find that error was not preserved.

▪▪▪ Even if appellant had preserved error, we find that the answers of the venire-

person clearly indicated that she was unable to differentiate between "intentional" and "deliberate" for purposes of special issue number one. Consequently, she was clearly challengeable for cause under *Felder v. State*, 758 S.W.2d 760, 770 (Tex.Cr. App.1988); *Lane v. State*, 743 S.W.2d 617, 629 (Tex.Cr.App.1987); et al. Appellant's eleventh point of error is overruled.

### *BATSON* ERROR [7]

 In his points of error six and seven, appellant asserts *Batson* error with respect to the prosecutor's exercise of peremptory challenges against venirepersons Rachel Pluguez Rose and Quynston Wallace Allen.[8] During cross-examination at the *Batson* hearing, the prosecutor testified that his decision to strike venireperson Rose was based on the following factors:

(1) That she would have held the State to a burden of proof higher than "beyond a reasonable doubt";

(2) That she had difficulty in distinguishing between the terms "deliberately" and "intentionally":

(3) That she had difficulty in understanding her role at the punishment phase of the trial;

(4) Her body language and demeanor;

(5) That the venireperson's statement about her inability to predict the future indicated she might have trouble answering the second special issue "yes" even if there was sufficient evidence presented of future dangerousness;

(6) That she expressed concerned about her children's welfare, in the event of a prolonged sequestration; and

(7) That her mother worked with death row inmates at the women's unit of a prison in Florida, and had spoken to the venireperson about the number of "outstanding" persons on death row.

Later in the *Batson* hearing the prosecutor, under cross-examination, stated that his decision to strike Venireperson Allen was based on the following factors:

(1) The venireperson had no rigid opinion on the death penalty, but he generally favored life imprisonment;

(2) That the venireperson attributed appellant's lack of rehabilitation (from prior imprisonment) to be attributable, in part, to the prison system itself;

(3) That the venireperson disagreed with certain parts Tex.Penal Code § 19.-03(a)(1);

---

**7.** See *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**8.** In point of error six, appellant asserts: "The trial court erred in failing to require the prosecutor to show that his peremptory challenge of venireman Rachel Pluguez Rose was based on racially neutral reasons." In an unpublished opinion, we abated appellant's appeal and remanded this cause to the trial court to rule on appellant's *Batson* objection, regarding venireperson Rose, and to conduct the requisite *Batson* hearing if it determined appellant has made a prima facie case of discrimination. *Kemp v. State*, — S.W.2d —, No. 70,403 (Tex.Cr.App. March 11, 1992).

In point of error seven, appellant argues that: "The trial court erred by refusing to allow the appellant to cross-examine the State's attorney regarding his rationale for striking a black venireperson." As in our disposition of his sixth point of error, we abated and remanded appellant's seventh point of error for a *Batson* hearing on this venireperson.

On June 11, 1992, appellant was afforded a full *Batson* hearing regarding the State's reasons for peremptorily striking venireperson's Rose and Allen. At that time, appellant was allowed

to cross-examine the prosecutor regarding his explanations for striking both venirepersons. At the conclusion of this *Batson* hearing, the trial judge entered the requisite findings of fact and conclusions of law regarding appellant's *Batson* claims. Specifically, the trial judge found that, based on the transcript of the voir dire, the State's original explanations for the peremptory challenges, the juror information sheets, and the answer's given by the prosecutor during the extensive cross-examination at the June 11, 1992, *Batson* hearing, there was no racially motivated purpose underlying the State's peremptory challenges of these venirepersons. Based on the foregoing, the trial judge denied appellant's requested relief.

Because we now have the benefit of the original record, the transcript of the June 11, 1992, *Batson* hearing, and copies of the prosecutor's notes taken during the original voir dire, we will address the substantive merits of appellant's *Batson* claims. The only issue left to resolve is whether the trial judge correctly overruled appellant's *Batson* challenges, with respect to venirepersons Rose and Allen.

(4) That the venireperson seemed to have "a great deal of hesitancy" in stating that he could follow the law as given to him by the trial judge;

(5) That the venireperson expressed that it would be impossible for him to predict the future;

(6) That the venireperson would have had great difficulty in answering special issue two "yes" if the defendant had been under the age of thirty at the time of the crime;

(7) That the venireperson was concerned that innocent people were being executed for capital crimes;

(8) That the venireperson favored rehabilitation as his primary theory of punishing offenders; and

(9) That the venireperson had an unstable job history.

■ We note, initially that we will review the evidence adduced at the *Batson* hearing in the light most favorable to the trial court's ruling. *Williams v. State*, 804 S.W.2d 95 (Tex.Cr.App.1991). Thus, we will not overturn a trial judge's finding that the State exercised its strikes in a race neutral manner unless such ruling is clearly erroneous. *Whitsey v. State*, 796 S.W.2d 707, 720–23 (Tex.Cr.App.1989) (op. on reh'g).

Throughout his cross-examination, appellant heavily relied on the fact that other venirepersons whom the State found acceptable possessed the same characteristics that the prosecutor alleged caused him to excuse venirepersons Rose and Allen. The prosecutor conceded this fact several times during his cross-examination; however, the prosecutor also stated a number of times that it was the combination of a number of questionable aspects of the venireperson's answers which led him to strike them.

When the State has offered more than one plausible reason for peremptorily striking a venireperson, the reviewing court should analyze the totality of the venireperson's voir dire to assess whether the State's explanation was valid or merely pretextual. Where, as here, the State has offered numerous race-neutral reasons for its challenge, we cannot say that the fact that there were other acceptable jurors possessing one or more of these objectionable attributes, is, alone, sufficient to establish disparate treatment.

As discussed above, we accord great deference to the trial judge who was present to assess the credibility of the prosecutor and his explanations. See *Salazar v. State*, 818 S.W.2d 405 (Tex.Cr.App.1991). Thus, notwithstanding any evidence that may have called into question portions of the prosecutor's explanations, we do not find this evidence so persuasive that the trial judge's ruling to the contrary was unreasonable as a matter of law. See *Lewis v. State*, 815 S.W.2d 560, 564 (Tex.Cr. App.1991). Based on the foregoing, we conclude that the trial court did not err in holding that the State's reasons for excusing venirepersons Rose and Allen were race neutral. *Id.* Appellant's sixth and seventh points of error are overruled.

## RECUSAL OF TRIAL JUDGE

■ Appellant's seventeenth and eighteenth points allege that the denial of their Motion for Disqualification constituted reversible error. We disagree. On March 14, 1988, appellant filed a pretrial Motion for Disqualification, in which he moved trial judge Don Leonard to recuse himself. The motion asserted that because Judge Leonard was the judge who had signed the appellant's initial search and arrest warrants, appellant's due process rights would be violated unless the judge agreed to recuse himself from the trial.

On March 15, 1988, Judge Joe Drago presided at a hearing conducted to determine the merits of appellant's motion. At the pretrial hearing, Judge Leonard testified that he had no independent recollection of the warrants but recognized his handwriting on both. Similarly, the judge testified he could not remember the supporting affidavits, but it was his custom to read the affidavits before coming to a probable cause determination. On cross-examination by the State, the judge stated he could remain impartial to both sides during appellant's trial and had no bias or prejudice of any type against appellant.

■ As regards Judge Leonard's refusal to recuse himself, appellant predicates error on alleged violations of the Code of Judicial Conduct. However, mere violations of the Code of Judicial Conduct, alone, do not constitute reversible error: "After the [trial judge's] violation [of the Code of Judicial Conduct], the parties could only thereafter entertain a feeling that the scales would be unfairly balanced against them during the remainder of the trial. Unethical conduct, however, is not necessarily a legal ground for reversal." *Shapley v. Tex. Dep't of Human Res.*, 581 S.W.2d 250, 253 (Tex.Civ.App.—El Paso 1979).

Even assuming a violation of the Code of Judicial Conduct might give rise to reversible trial error there is no such violation in the instant case. Appellant argues that Judge Leonard violated "Canon 3(C) of the Code of Judicial Conduct," as quoted from appellant's brief in relevant part:

A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including, but not limited to, instances where:

(a) He has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

However, at the time of the hearing on appellant's recusal motion, the canon cited by appellant had been modified (as of January 21, 1987) and the above-quoted language deleted. Our review of the entire Code of Judicial Conduct, as it existed at the time of the recusal hearing, reveals no similar provision or language that could support appellant's arguments.[9] Appel-

lant's seventeenth point of error is overruled.

■ Appellant's second argument, as we understand it, is that Judge Drago erred in not ordering the recusal of Judge Leonard, because the fact that Judge Leonard signed the search and arrest warrants would have been tantamount to the judge's commenting on that evidence, if appellant were to contest the legality of his arrest or the seizures authorized by Judge Leonard. Appellant predicates this argument on judicial bias as a common-law basis for disqualification, and cites this Court to our decision in *McClenan v. State*, 661 S.W.2d 108, 109 (Tex.Cr.App.1983). We agree with appellant that bias may be a ground for judicial disqualification when the bias is of such character that it denies a defendant due process; however, we perceive no such denial in the instant case.

■ A trial judge ruling on a motion alleging bias as a ground for disqualification must decide whether the movant has provided facts sufficient to establish that a reasonable man, knowing all the circumstances involved, would harbor doubts as to the impartiality of the trial judge. See *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir. 1982); see also, *McClenan*, supra at 109. Bias may be a ground for disqualification only when it is shown to be of such nature, and to such extent, as to deny the defendant due process of law. M. Teague & B. Helft, 2 *Texas Criminal Practice Guide* § 63.04[1][e] at 63–17 (1990); see also, *McClenan v. State*, 661 S.W.2d 108, 110 (Tex.Cr.App.1983). Moreover, it is beyond

9. We note that even appellant's version of the Code of Judicial Conduct does not support his argument to this Court that: "Having previously found the existence of probable cause which resulted in the issuance of the [search and arrest] warrants previously mentioned, it was not unreasonable for the Appellant to fear that he might not be wholly impartial in the trial of his case and resolution of matters of law." Clearly, the mere fact that Judge Leonard authorized the arrest and search warrants involved in this case is, alone, insufficient to draw into question his impartiality, especially considering Judge Leonard's sworn testimony at the recusal hearing that he was impartial and unbiased.

As a relevant aside, we note that Tex.R.Crim. Evid. 605 prohibits the presiding judge at a trial from testifying as a witness in that trial. In *Hensarling v. State*, 829 S.W.2d 168 (Tex.Cr.App. 1992), we construed Rule 605 to circumscribe only that situation in which a trial judge would actually "step down from the bench" to become a witness in the very same proceeding in which he is currently presiding. Because Judge Leonard was never called upon to give testimony in appellant's actual trial, there was no violation of Rule 605.

rational dispute that before alleged bias becomes sufficient to warrant the disqualification of a judge, it "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

The mere fact that a trial judge issued a defendant's search or arrest warrant, alone, does not establish bias against that defendant in a subsequent criminal proceeding:

> "Judges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it. Judges also preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial. Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge's presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence."

*Withrow v. Larkin,* 421 U.S. 35, 56, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712 (1975); See also, W. LaFave & J. Israel, 2 *Criminal Procedure* § 21.4(b) (1984) (Trial judge's involvement in prior proceedings and awareness of facts that have no direct bearing on guilt does not, alone, demonstrate bias). In *Durrough v. State,* 620 S.W.2d 134, 143 (Tex.Cr.App.1981) this Court stated:

> The most important flaw in the appellant's argument is the assumption that a judge who rules on an issue at one stage of a proceeding becomes partial, and is barred from ruling on that issue at any later stage.... There are many occasions on which judges are called to reconsider matters on which they have ruled before.... In no such case is a judge required to disqualify himself because

his earlier consideration of an issue has impaired his impartiality.

The rationale of *Durrough* applies with equal force to the instant case: i.e., the presumption of judicial impartiality cannot be overcome by the mere assertion of bias based solely on a trial judge's previous judicial relationship with a defendant. See, e.g., *United States v. Clark,* 605 F.2d 939, 941 (5th Cir.1979) (it would be "untenable" to hold that a judge who had once tried a defendant was thereafter barred from trying the same defendant on other, unrelated, charges).[10]

The refusal of a defendant's motion to disqualify is reviewable only for abuse of discretion. Tex.R.Civ.Proc. 18a(f). Thus, an appellate court should not reverse a trial judge whose ruling on the motion was within the zone of reasonable disagreement. See *Montgomery v. State,* 810 S.W.2d 372 (Tex.Cr.App.1991) (op. on reh'g).

In undertaking our abuse of discretion analysis, we consider the totality of the evidence elicited at the disqualification hearing, including the fact that Judge Leonard signed the arrest and search warrant, as well as Judge Leonard's testimony that he could not specifically recall the warrants and felt no bias toward appellant. Because the record reveals sufficient evidence to support Judge Drago's ruling that Judge Leonard was unbiased toward appellant, we hold that Judge Drago did not abuse his discretion by overruling appellant's motion to recuse. Appellant's points of error seventeen and eighteen are overruled.

### "CONNECTING" EXTRANEOUS OFFENSES TO APPELLANT

Appellant complains in his nineteenth and twentieth points of error, respectively, that the admission into evidence of a January 1982 unadjudicated extraneous offense and a March 1981 unadjudicated extraneous offense at the punishment phase of

10. The State argues that the denial of Appellant's motion is unreviewable because Appellant failed to comply with the notice and verification provisions of Rule 18a of the Texas Rules of Civil Procedure. Because we find the trial judge did not abuse its discretion in denying Appellant's motion, we need not reach this question.

appellant's trial was reversible error because these offenses were not "linked" to appellant. We disagree.

■ In capital cases, the admissibility of extraneous offense evidence offered at punishment is governed by Article 37.-071(a) of the Texas Code of Criminal Procedure.[11] See, e.g., S. Goode, et al., 33 *Texas Practice* § 404.7 (1988). This article has been construed to afford the trial judge wide latitude in admitting or excluding evidence of extraneous offenses at the punishment stage of a capital trial. *Allridge v. State,* 762 S.W.2d 146, 162 (Tex.Cr.App. 1988); *Briddle v. State,* 742 S.W.2d 379 (Tex.Cr.App.1987); *Smith v. State,* 676 S.W.2d 379 (Tex.Cr.App.1984). Extraneous offenses are admissible whether adjudicated or unadjudicated, violent or nonviolent, *Smith v. State,* 676 S.W.2d 379, 390 (Tex. Cr.App.1984); *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980), cert. denied, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980); *East v. State,* 702 S.W.2d 606, 615 (Tex.Cr.App.1985), and the proper admission of such evidence does not offend an accused's constitutional rights to due process and equal protection. *Williams v. State,* 622 S.W.2d 116 (Tex.Cr.App.1981), cert. denied, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *Smith,* supra at 390.

■ Article 37.071(a) clearly imbues the trial judge with the discretion to admit any evidence relevant to the jury's determination of a capital defendant's deathworthiness, including evidence of extraneous offenses. This article does not, however, negate the requirement that the State sufficiently connect the defendant to the alleged extraneous offense. See *Harris v. State,* 827 S.W.2d 949, 961 (Tex.Cr.App.1992);

*Beltran v. State,* 728 S.W.2d 382, 387 (Tex. Cr.App.1987); *Porter v. State,* 578 S.W.2d 742, 748 (Tex.Cr.App.1979); *Rumbaugh v. State,* 589 S.W.2d 414 (Tex.Cr.App.1979).

The core issue presented by appellant's point of error is the method by which the State must thus ensure a minimum threshold of reliability, by connecting a defendant with an alleged extraneous offense. It has been a longstanding principle that before a trial court can admit extraneous offense evidence the State must "clearly prove" that an offense was committed and that the accused was its perpetrator.[12] *Turner v. State,* 754 S.W.2d 668, 673 (Tex.Cr.App. 1988) (citations omitted); *Elkins v. State,* 647 S.W.2d 663, 665 (Tex.Cr.App.1983); *McCann v. State,* 606 S.W.2d 897, 900 (Tex.Cr.App.1980); *Sanders v. State,* 604 S.W.2d 108, 111 at fn. 5 (Tex.Cr.App.1980); *Ransom v. State,* 503 S.W.2d 810, 813 (Tex. Cr.App.1974).

■ We must determine whether, under the "clear proof" standard of connecting appellant to the extraneous offenses, the trial court abused its discretion in admitting evidence of appellant's offenses. In undertaking this analysis, we evaluate the trial court's ruling solely to determine whether it was within that zone of reasonable disagreement, in which "[r]easonable men may disagree whether in common experience a particular inference is available." *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Cr.App.1990) (op. on reh'g). Thus, this court will not conduct a de novo review of the evidence so as to superimpose its own review of the evidence over an equally plausible interpretation of the trial court.

---

11. Tex.R.Crim.Proc. art. 37.071(a) provides:
 Upon a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment. The proceeding shall be conducted in the trial court before the trial jury as soon as practicable. *In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence.* This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitu-

tion of the United States or of the State of Texas. The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death. (Emphasis supplied.)

12. But c.f., *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (holding that evidence of an extraneous offense "should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act.").

At punishment, the State offered the following evidence as to the January 1982 offense:

(1) Lester Beene testified that on January 22, 1982, when he was assistant vice principal of Dunbar High School, he found a student pointing a gun at the head of another student, detained that student and called the police; and

(2) Fort Worth Police Officer Charles McCarty testified that on January 22, 1982, he was called to Dunbar High School where he took appellant into custody for this offense.

As regards the March 1981 offense, the State presented the following evidence at the punishment stage of appellant's trial:

(1) Officer McCarty testified that he went to Dunbar High School on March 25, 1981, where he took appellant into custody for reckless conduct;

(2) Then–Forth Worth Municipal Judge James Riddell testified that on March 25, 1981, appellant was brought before him by a Fort Worth police officer to be warned of his rights.

We conclude that a rational trier of fact could have found that this evidence established by clear proof that appellant, in fact, committed the alleged extraneous offenses. Thus, the trial court did not abuse its discretion in admitting and allowing the jury to consider evidence of both offenses. Appellant's nineteenth and twentieth points are overruled.

### VIOLATION OF APPELLANT'S MOTION IN LIMINE BY STATE'S WITNESS

■ Appellant's point of error twenty-one alleges the trial court's erred in failing to grant a mistrial after a State's witnesses testified that appellant had a prior felony conviction, when this statement was in violation of one of appellant's granted motions in limine.

Q: [BY THE STATE] When you received that information what did you do with the information.

A: Began checking it out.... And to the best of my memory, this caller also provided information that she had a son

named Kent or Kemp who had recently been released from the penitentiary.

[DEFENSE COUNSEL]: Your Honor, at this time, Your Honor, may we ask that the Jury be excused? And then I would like to make an objection outside the presence of the Jury.

At appellant's request, the trial court instructed the jury to "disregard for all purposes the last answer of the officer ... and consider it for no purpose in this trial." The court refused, however, to grant appellant's motion for mistrial.

■ In is well-settled that testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard by the trial judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind. *Gardner v. State*, 730 S.W.2d 675, 696–97 (Tex.Cr.App.1987); *Davis v. State*, 642 S.W.2d 510, 512 (Tex.Cr.App.1982). We find the uninvited and unembellished reference to appellant's prior incarceration—although inadmissible—was no so inflammatory as to undermine the efficacy of the trial court's instruction to disregard. See *Gardner*, supra at 696–97 (witnesses statement that "[appellant] told me that even when he was in the penitentiary, that he had stomach problems" was cured by trial court's instruction to disregard). Appellant's twenty-first point of error is overruled.

### CONSTITUTIONALITY OF TEX.CRIM.PROC.CODE ART. 37.071(b)(2)

■ Appellant's fourteenth and fifteenth points predicate error on the term "probability", as used in Tex.Crim.Proc. Code art. 37.071(b)(2). Specifically, appellant first complains, "This death sentence is invalid because it is based on the jurors' application of the term 'probability', a vague and indefinite term." Appellant's second argument is that, "This conviction is invalid because it ... decreases the State's burden of proof from beyond a reasonable

doubt to that of only 'probable.'" We reject both of appellant's arguments.

Article 3.01 of the Texas Code of Criminal Procedure provides: "All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined." This article applies to the term "probability". *King v. State*, 553 S.W.2d 105, 107 (Tex.Cr.App.1977), cert. denied, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978); see also, e.g., *DeLuna v. State*, 711 S.W.2d 44, 47 (Tex.Cr.App. 1986), cert. denied, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989) (holding that it is "well-settled" that "a probability" need not be defined in the court's charge to the jury); *Adams v. State*, 577 S.W.2d 717, 730 (Tex.Cr.App.1979), modified, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) (no definition of "criminal acts of violence" need be given to jury).

It is equally well-settled that the trial judge's refusal to define these terms poses no constitutional problems. *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (affirming the constitutional validity of article 37.071 as worded, and without reference to special definitions); see also, *Caldwell v. State*, 818 S.W.2d 790 (Tex.Cr.App.1991). As regards appellant's point of error asserting the second special issue diminishes the State's burden of proof, we rejected a similar argument in *Sosa v. State*, 769 S.W.2d 909, 916–17 (Tex. Cr.App.1989):

> [A]ppellant argues that Article 37.-071(b)(2) V.A.C.C.P. is unconstitutional in that it diminishes the burden of proof required under the Fifth and Fourteenth Amendments[, inter alia,] ... Specifically, he maintains that since the jury is required to find only a *probability* that the defendant would commit criminal acts of violence that would constitute a continuing threat to society, the standard of proof is significantly less stringent than proof beyond a reasonable doubt. Although appellant's argument is quite novel, we find it to be without merit.... To single out the word "probability" from the language of the second special issue and infer a lessening of the State's

> burden of proof is to take the word totally out of context. Such an interpretation of the statute violates the spirit of the Code Construction Act....

We find our holding in *Sosa* to be dispositive of appellant's point of error. Points of error fourteen and fifteen are overruled.

### *PENRY* ERROR

 Appellant's first point of error alleges "This sentence constitutes a cruel and unusual punishment because it is based on a jury determination that did not allow consideration of the mitigating factors presented in this case." Appellant thus challenges the constitutionality of the capital sentencing statute, Tex.Code Crim. Proc. art. 37.071(b), on the grounds that the statute did not provide the jury with a means to give effect to its conclusions regarding any mitigating evidence relevant to whether appellant should be sentenced to death. See *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). We reject appellant's argument.

In the case at bar, appellant offered the following evidence at the punishment stage of his trial: (1) positive character traits, including devotion and affection for his mother and father and a "sensitivity towards others" (specifically former victims of appellant's extraneous offenses); (2) religious devotion; (3) emotional difficulties during appellant's childhood, specifically that appellant's mother was demanding and dependent, that appellant was treated differently from his other siblings, and that appellant was extremely nervous because of his childhood relations with his mother; (4) appellant's age (he was 22 at the time of the offense); and (5) the existence of mitigating circumstances in the extraneous offenses offered at the punishment stage of appellant's trial.

Since the Supreme Court's decision in *Penry*, this Court has thoroughly considered what types of evidence are and are not legitimate *Penry* evidence. See, e.g., *Lackey v. State*, 819 S.W.2d 111 (Tex.Cr. App.1991) (op. on reh'g); *Trevino v. State*, 815 S.W.2d 592 (Tex.Cr.App.1991); *Black v. State*, 816 S.W.2d 350 (Tex.Cr.App.1991);

**310**

*Boggess v. State,* No. 69,990, 1991 WL 87597 (Tex.Cr.App.—May 29, 1991); *Richardson v. State,* No. 68,934, 1991 WL 99949 (Tex.Cr.App.—June 12, 1991); *Lewis v. State,* 815 S.W.2d 560 (Tex.Cr.App.1991); *Ex Parte Baldree,* 810 S.W.2d 213 (Tex.Cr. App.1991); *Jackson v. State,* 819 S.W.2d 142 (Tex.Cr.App.1990).

As regards the specific types of *Penry* evidence extant in appellant's case, we have refused to extend *Penry* to include evidence relating solely to an appellant's youth (*Lackey, Trevino, Jackson*), religious devotion (*Richardson*), "sensitivity towards others" (*Black, Richardson; Baldree*), and the "emotional difficulties" appellant experienced as a child (*Richardson, Lackey, Lewis*). In addition, we hold that the mitigating circumstances of appellant's extraneous offenses, even if somehow relevant in the *Penry* context, are not of the same character or quality as existed in the case of *Penry.*

Based on the foregoing, we hold that appellant's punishment evidence was not relevant, beyond the scope of the special issues, to the jury's individualized assessment of his moral culpability for the crime. Thus, appellant was not entitled to a separate *Penry* instruction in order for the jury to give mitigating effect to the evidence he presented at trial. Point of error number one is overruled.

The judgment of the trial court is AFFIRMED.

CLINTON, J., dissents.

OVERSTREET, concurs in the result.

BAIRD and BENAVIDES, JJ., not participating.