In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00071-CR


______________________________




ANTHONY GEORGE FOMBY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 276th Judicial District Court


Morris County, Texas


Trial Court No. 10,035




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 After a trial by jury, Anthony George Fomby was convicted of possession of more than four
grams but less than 200 grams of cocaine, a second degree felony that was enhanced to first degree
felony punishment by a prior conviction. The jury assessed Fomby's punishment at ninety-nine
years' imprisonment and a $10,000.00 fine, to which he was sentenced by the trial court. 

I. Background Facts 

 On April 26, 2008, Texas Department of Public Safety Trooper Roger Penney clocked a car
driven by Fomby at seventy-nine miles per hour in a seventy-mile-per-hour zone, and Penney began
following the vehicle. The vehicle made two U-turns and eventually turned into the driveway of
Sam and Dixie Moore, neither of whom knew Fomby. Penney parked his patrol car behind Fomby's
car and saw him get out of the vehicle, walk to the Moores' front porch and carry on a short
conversation with someone, later identified as Dixie Moore, at the Moores' front door. Penney
looked through Fomby's car windows and saw an open container of beer and a clear plastic bag
found to contain 0.6 grams of cocaine. Dixie saw Fomby put something into a small trash can next
to the door. Subsequently, a plastic bag containing 6.59 grams of cocaine was found in the trash
can. (1) 

 On appeal, Fomby contends the evidence supporting the conviction is legally and factually
insufficient. (2) We affirm the judgment because the evidence was legally and factually sufficient to
prove possession of a controlled substance. 

II. Legal and Factual Sufficiency 

 In his sole point of error, Fomby argues the evidence supporting his conviction was legally
and factually insufficient. We disagree. After reviewing the evidence on the required standards for
legal (3) and factual (4) sufficiency, we find the evidence sufficient to support the jury verdict. 

 A. Standard of Review

 In this analysis, we use a hypothetically correct jury charge to evaluate both the legal and
factual sufficiency of evidence. (5) Grotti v. State, 273 S.W.3d 273 (Tex. Crim. App. 2008). Such a
charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase
the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately
describes the particular offense for which the defendant was tried. Villarreal v. State, 286 S.W.3d
321 (Tex. Crim. App. 2009); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

 B. Requirement of Links to the Controlled Substance

 A conviction for possession of cocaine, a penalty group 1 controlled substance, see Tex.
Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp. 2008), is supported only when the
defendant "knowingly or intentionally possesses" the cocaine. See Tex. Health & Safety Code
Ann. § 481.115(a) (Vernon 2003). Proof of possession requires evidence that the accused exercised
"actual care, custody, control, or management" over the substance. Tex. Penal Code Ann.
§ 1.07(a)(39) (Vernon Supp. 2008); see also Tex. Health & Safety Code Ann. § 481.002(38)
(Vernon Supp. 2008). Thus, the State must prove the accused (1) exercised "actual care, custody,
control, or management over the [contraband]" and (2) knew that the matter "possessed" was
contraband. Martin v. State, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988).

 When an accused is not in exclusive possession of the place where contraband is found, it
cannot be concluded he or she had knowledge or control over the contraband unless there are
additional independent facts and circumstances that link the accused to the contraband. Poindexter
v. State, 153 S.W.3d 402 (Tex. Crim. App. 2005). These "links" may be either direct or
circumstantial and must establish, to the requisite level of confidence, that the accused's connection
with the drug was more than just fortuitous. Id. at 405-06.

 The number of links present is not as important as the degree to which they tend to link the
defendant to the controlled substance. Taylor v. State, 106 S.W.3d 827, 831 (Tex. App.--Dallas
2003, no pet.); Williams v. State, 906 S.W.2d 58, 65 (Tex. App.--Tyler 1995, pet. ref'd); Whitworth
v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin 1991, pet. ref'd). There is no set formula of facts
that dictate a finding of links sufficient to support an inference of knowing possession of contraband.
Porter v. State, 873 S.W.2d 729, 732 (Tex. App.--Dallas 1994, pet. ref'd). Nonetheless, recognized
factors include whether: (1) the contraband was in plain view or recovered from an enclosed place;
(2) the accused was the owner of the premises or the place where the contraband was found; (3) the
accused was found with a large amount of cash; (4) the contraband was conveniently accessible to
the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual
odor of the contraband was present; (7) the accused possessed other contraband when arrested;
(8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical
condition of the accused indicated recent consumption of the contraband in question; (10) conduct
by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the
accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the
occupants of the premises gave conflicting statements about relevant matters; (15) the accused made
incriminating statements connecting himself or herself to the contraband; (16) the quantity of the
contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. 
See Lassaint v. State, 79 S.W.3d 736, 740-41 (Tex. App.--Corpus Christi 2002, no pet.); Kyte v.
State, 944 S.W.2d 29, 31-32 (Tex. App.--Texarkana 1997, no pet.). It is the logical force the
factors have in establishing the elements of the offense, not the number of them, that is important. 
In other words, we ask if there is evidence of circumstances, in addition to mere presence or
proximity, that adequately justifies the conclusion that the defendant knowingly possessed the
substance. Evans v. State, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006); see generally King v.
State, 895 S.W.2d 701 (Tex. Crim. App. 1995).

 C. Fomby's Possession of the Contraband 

 Considering the framework just set out, we now turn to the facts of the case to determine if
sufficient evidence links Fomby to the 6.59 grams of cocaine found in the trash can. Penney parked
his patrol car behind Fomby's car and saw him get out of the vehicle, walk to the Moores' porch and
carry on a short conversation with someone, later identified as Dixie, at the Moores' front door. The
trash can in which the 6.59 grams of cocaine was found was on the Moores' porch adjacent to the
door. While Fomby spoke with Dixie, Penney looked through Fomby's car windows and saw an
open container of beer and a clear plastic bag containing a white powder. After leaving the Moores'
porch, Fomby spoke with Penney and admitted that the white powder was cocaine. 

 Dixie testified that a man she did not know knocked on her door and asked if the Moores' car
was for sale, and she told him "no." There was no "for sale" sign on the car or in the Moores' yard. 
After the conversation, as Dixie was closing the door, she saw "him lean over and try to stuff
something inside the trash can," "like he was pushing something down toward the bottom." (6) She
explained to her husband, Sam, what happened; he searched the trash can, found the plastic bag
containing 6.59 grams of cocaine, and alerted Penney. The bag of cocaine was "wrapped similarly"
to the plastic bag of cocaine in Fomby's car. 

 When faced with a record that supports conflicting inferences, we presume the trier of fact
resolved any conflict in support of the verdict. See id. at 164 n.19; Matson v. State, 819 S.W.2d 839,
846 (Tex. Crim. App. 1991). "The jury is the exclusive judge of the credibility of witnesses and of
the weight to be given testimony, and it is also the exclusive province of the jury to reconcile
conflicts in the evidence." Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). In
resolving conflicts in the evidence, a jury "may accept one version of facts and reject another or
reject any of a witness' testimony." Baker v. State, 986 S.W.2d 271, 276 (Tex. App.--Texarkana
1998, pet. ref'd). 

 Here, Fomby's presence and actions at the Moores' residence indicated suspicious
circumstances. The contraband was found in close proximity to Fomby, recovered from an enclosed
place, and was conveniently accessible to Fomby. Other contraband was found in Fomby's
possession. The logical force of the evidence is sufficient for a jury to reasonably infer that Fomby
placed the bag of cocaine in the trash can, and therefore, the bag of cocaine was knowingly under
Fomby's care, custody, control, or management. Cf. Evans, 202 S.W.3d at 162. There is ample
evidence supporting the verdict from which a rational jury could find the elements of possession of
a controlled substance beyond a reasonable doubt. The evidence is not so weak that the jury's verdict
is clearly wrong and manifestly unjust. 


 We overrule Fomby's points of error and affirm the judgment of the trial court. 


 Jack Carter

 Justice


Date Submitted: September 16, 2009

Date Decided: October 2, 2009


Do Not Publish 

1. Eight plastic bags of white powder were found in the trash can; however, only the bag
containing 6.59 grams of cocaine was tested for verification of its contents. 
2. Fomby admits that he possessed the 0.6 grams of contraband found in the vehicle, but
specifically challenges the charge that he possessed the 6.59 grams of cocaine found in the trash can.
3. Laster v. State, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009).
4. Id. at 518-19. 
5. We find the trial court's charge to the jury to have been in substantial, if not complete,
compliance with the applicable law, and thus, the equivalent of a hypothetically correct charge. 
6. Sam did not see with whom Dixie was speaking; however, he positively identified Fomby
as the man speaking with Penney. Dixie testified Fomby was similar in appearance to the man that
knocked on her door, but she could not positively identify Fomby as the same man.


aying the juror knew some of the people "in chairs," which we take to refer to people having
significant roles at trial. The juror said she saw five persons whom she recognized. Newsome's trial
counsel questioned the juror about Bobby Bell, a convicted felon who later testified for the State at
the punishment phase. The juror testified she did not know Bell, but knew of him. Bell had fathered
a child with the juror's great-niece, Amanda Daniels. 
            At trial, Newsome asked for a mistrial, citing the juror's bias and relationship to a witness. 
Newsome's counsel said he did not "know whether it's for or against my client. I do know the facts
are she is related, I think she's related, I think it meets the definition, to a witness in this case." 
            Newsome complains now only that the juror and witness were related within the third degree
of consanguinity, and therefore the trial court should have excused the juror or granted Newsome
a mistrial by reason of Article 35.16 of the Texas Code of Criminal Procedure. That statute in
relevant part allows a defendant to challenge for cause a juror who "is related within the third degree
of consanguinity or affinity to the person injured by the commission of the offense, or to any
prosecutor in the case . . . ." Tex. Code Crim. Proc. Ann. art 35.16(c)(1) (Vernon Supp.
2004–2005).
            Article 35.16 (c)(1) does not apply here. At most, the juror had some relation to witness Bell:
Bell fathered a child with the juror's great-niece. There is nothing to indicate the juror was related
to a victim of Newsome or to any prosecutor on the case. We overrule this point of error.
(4) A Witness' Testimony That Newsome "Robs People" Did Not Mandate a Mistrial
            In his sixth point of error, Newsome complains of a statement by State's witness Benton. 
Benton was the cleaning lady on duty at the hotel the day of the robbery. Benton testified that,
earlier in the day, she had seen a car belonging to a local man, Lakendric "Peewee" Miller. Miller's
car was a distinctive maroon Cadillac. Benton said that, as soon as she received the call from the
hotel office about the robbery, she thought of the car, then of Newsome. When asked why she
thought of Newsome, Benton testified, "Because I know Jarmar. And Jarmar, he robs people. I
know he robs people. And I know he has robbed people - -. " Newsome's counsel objected, the jury
was excused, and Newsome's counsel moved for a mistrial. Benton did not mention a specific
occurrence of Newsome having committed other robberies. The trial court overruled Newsome's
motion for a mistrial but instructed the jury to disregard Benton's volunteered comments that
Newsome "robs people."
            An instruction to disregard the improper evidence of an extraneous offense normally cures
error, except in extreme cases where it appears that the evidence is clearly calculated to inflame the
minds of the jury and is of such a character as to suggest the impossibility of withdrawing the
impression produced on the jurors' minds. Livingston v. State, 739 S.W. 2d 311 (Tex. Crim. App.
1987); Carter v. State, 614 S.W.2d 821 (Tex. Crim. App. 1981). Mistrial is an extreme remedy
which is appropriate only when the objectionable event is so emotionally inflammatory that a
curative instruction is not likely to prevent the jury from being unfairly prejudiced against the
defendant. See Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). As stated above,
testimony referring to extraneous offenses can be rendered harmless by an instruction to disregard,
unless it is so clearly calculated to inflame the minds of the jury and is of such a nature as to suggest
the impossibility of withdrawing the impression produced. Kemp v. State, 846 S.W.2d 289, 308
(Tex. Crim. App. 1992); Gardner v. State, 730 S.W.2d 675, 696–97 (Tex. Crim. App. 1987); Bryant
v. State, 25 S.W.3d 924, 926 (Tex. App.—Austin 2000, pet. ref'd). 
            Kemp involved a somewhat similar situation. There, a witness for the State mentioned that
Kemp had previously been incarcerated in the penitentiary. Kemp, 846 S.W.2d at 308. The Texas
Court of Criminal Appeals there found that the statement was not of such an inflammatory nature
that it could not be cured with an instruction from the trial court to disregard. Id. 
            We find the uninvited and unembellished reference to alleged extraneous conduct by
Newsome was not so inflammatory as to undermine the efficacy of a trial court's instruction to
disregard. Id. Because any harm arising from the statement could have been cured by instruction,
we conclude the trial court did not abuse its discretion by refusing to grant a mistrial. We also note
that, even if denying a mistrial was error, there was no harm from the statement, given the
considerable evidence of Newsome's guilt in this case. We overrule this point of error.
(5) Requiring Newsome To Give a Voice Exemplar Was Not Error
            Newsome's final point of error addresses the trial court's order that Newsome read a
statement one of the victims claimed the robber made during the robbery. At trial, the State asked
that Newsome be required to stand and "speak to the witness," Barbara Williams, one of the robbery
victims. After argument by counsel and researching caselaw, the trial court found that the defendant
did not have "Fifth Amendment protection for purposes of identification for speaking." The State
asked Newsome to read the statement, "Bitch, do you think I'm playing? If you don't open[,] I, I'm
going to shoot her," which Williams said was what the robber had said to her during the crime. The
trial court stated that having the defendant use the words "bitch" and "shoot" would be overly
prejudicial, and required Newsome to simply say, "Do you think I'm playing?" Newsome repeated
the phrase, and Williams identified his voice as that of the robber.
            Newsome complains that requiring him to make the above statement in open court amounted
to requiring him to make a testimonial statement and thereby violated his rights under the Fifth and
Fourteenth Amendments to the United States Constitution. But Texas courts have long held that
requiring defendants to say certain words for identification purposes does not fall within the purview
of the protection against self-incrimination, in either the Texas or United States Constitutions. See
McInturf v. State, 544 S.W.2d 417, 420 (Tex. Crim. App. 1976). As with handwriting or blood
samples and physical features, the voice is an identifying characteristic of the accused which falls
outside the scope of the constitutional privilege. Moulton v. State, 486 S.W.2d 334, 337 (Tex. Crim.
App. 1971). More recently, the Texas Court of Criminal Appeals has cited the United States
Supreme Court's position on voice exemplars:
[C]ompelling [the defendant] to speak within hearing distance of the witnesses, even
to utter words purportedly uttered by the robber, was not compulsion to utter
statements of a "testimonial" nature; he was required to use his voice as an
identifying physical characteristic, not to speak his guilt.

Williams v. State, 116 S.W.3d 788, 791–92 (Tex. Crim. App. 2003) (quoting United States v. Wade,
388 U.S. 218, 222–23 (1967)). We overrule Newsome's seventh point of error.
 
            We affirm the judgment.

 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 3, 2005
Date Decided:             July 8, 2005

Do Not Publish