

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00177-CR

DONALD RAY SPARKS, JR.                                                    APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

## FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1268922R

----------

## MEMORANDUM OPINION[1]

----------

Appellant Donald Ray Sparks, Jr. appeals his conviction for murder. In five

issues, Sparks argues that the trial court erred by admitting extraneous-offense

---

[1]*See* Tex. R. App. P. 47.4.

evidence, by denying his motion for a mistrial, and by denying his request for a limiting instruction. We will affirm.[2]

Brittany left her house to go to work at around 8:00 p.m. on April 28, 2010. Sparks had been at Brittany's house all day and agreed to watch her four young children until Mar'sha, Brittany's friend, finished attending church and could come over to relieve him.

Mar'sha headed to Brittany's house sometime around 9:00 p.m. and discovered that an iron screen door, which was usually unlocked, was locked. After speaking to Brittany on the cell phone, Mar'sha knocked on a bedroom window and told Brittany's son Brian,[3] who had opened the curtain, to open the door. Sparks, who was sweaty and not wearing a shirt, opened the door. He said nothing to Mar'sha and went to Brittany's bedroom.

Mar'sha proceeded to the children's bedroom and saw Brian and two of Brittany's daughters but not B.N., Brittany's two-year-old daughter. Mar'sha then went to Brittany's bedroom and found B.N. lying face down on the bed, naked and covered with a towel. Sparks was standing by the closet; he said nothing to Mar'sha and did not seem upset. Mar'sha thought that B.N. was asleep, and she put underwear on B.N. and picked her up. When Mar'sha did that, she noticed that B.N. was limp and unresponsive, that her eyes were rolled back, and that

---

[2]This cause was assigned for writing to the author on January 31, 2014.

[3]We use an alias to protect the minor's identity. *See* Tex. R. App. P. 9.10(a)(3); 2nd Tex. App. (Fort Worth) Loc. R. 7.

she had a bruise on her head, by her temple.  Sparks told Mar'sha that the children were playing in the room and that B.N. had hit the side of her head on the bed.  He also said that he had put B.N. in the bathtub to keep her awake but that she had slipped and hit her head again.  Sparks had not called Brittany or an ambulance.  Mar'sha, however, spoke to Brittany and called 911.

The fire department arrived at Brittany's house at approximately 9:40 p.m., shortly before an ambulance and the police arrived.  One of the firefighters who attended to B.N. noticed that she had bruising on her left forehead, right temple, right cheek, upper chest, and abdomen and on both arms and legs and that there were several small piles of bloody vomit on the floor near her.  Sparks, who was in the living room chain smoking, told the firefighter the same thing that he had told Mar'sha—that B.N. had hit her head twice.  B.N.'s condition was deteriorating rapidly, and during the ambulance ride to Cook Children's Medical Center, responders noticed that the bruises on her head and abdomen had become darker.

At the hospital, a CT scan revealed that B.N. had sustained several abdominal injuries—her inferior vena cava (one of the largest veins in the body) was lacerated and actively bleeding, her liver was lacerated and actively bleeding, and her pancreas and spleen were damaged.  B.N.'s abdomen became distended, and when physicians performed surgery on her, she arrested three times and had her blood volume replaced four or five times.  After surgery, a

3

pediatric nurse who examined B.N. noted that she had significant bruising on her genitals.

Meanwhile, when police returned to Brittany's house at approximately 10:50 p.m., they discovered Sparks cleaning it; trash bags were filled and the washing machine was running with only a few articles of children's and adult's clothing inside. Detectives interviewed Sparks three times, and he consistently recalled that B.N. had hit her head twice, even after being informed that B.N. had sustained traumatic abdominal injuries.

B.N. died approximately twenty-six hours after arriving at the ER. A grand jury later indicted Sparks for capital murder. At trial, the ER physician who performed surgery on B.N. testified that she had experienced severe blunt force trauma to her abdomen from her front side. Similarly, the physician who performed B.N.'s autopsy concluded that although B.N. had sustained several subarachnoid hemorrhages, those injuries to her head were not fatal; her death was caused by "internal hemorrhage associated with shock due to blunt trauma to the abdomen." The nurse who examined B.N. after her surgery testified that there was no way her injuries were accidental. The jury convicted Sparks of murder and assessed his punishment at ninety-nine years' confinement.

Sparks argues in his second, third, and fourth issues that the trial court abused its discretion by admitting evidence that B.N. had sustained injuries to her thigh and genitals. He contends that the "clear implication" of those injuries was that B.N. had been sexually assaulted, and because the indictment

4

contained no allegation of sexual assault, the testimony constituted evidence of an inadmissible extraneous offense, which was not admissible as same-transaction contextual evidence, as an exception to rule 404(b), or under rule 403.

We review the trial court's admission of evidence for an abuse of discretion. *Kirk v. State*, 421 S.W.3d 772, 781 (Tex. App.—Fort Worth 2014, pet. ref'd); *see Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex. Crim. App. 1991) (op. on reh'g). The trial court's ruling will be upheld as long as it falls within the "zone of reasonable disagreement" and is correct under any theory of law applicable to the case. *Kirk*, 421 S.W.3d at 782.

Same-transaction contextual evidence is evidence reflecting the context in which a criminal act occurred. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). It is a recognition that events do not occur in a vacuum, and a jury has a right to hear what occurred immediately before and after the offense in order to realistically evaluate the evidence. *Id.* Extraneous offenses may be admissible as same-transaction contextual evidence when several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction. *Prible v. State*, 175 S.W.3d 724, 731–32 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). This type of evidence results when an extraneous matter is so intertwined with the State's proof of the charged offense that avoiding reference to it would make the State's case incomplete or difficult to understand. *Id.* at 732.

Under rule 404(b), evidence of an accused's "other crimes, wrongs or acts is not admissible to prove the character of a person in order to show conformity therewith."  Tex. R. Evid. 404(b).  Evidence of extraneous acts "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]"  *Id.*

Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."  Tex. R. Evid. 403.

The evidence that B.N. sustained trauma to her thigh and genitals was admissible as same-transaction contextual evidence.  B.N. suffered injuries to numerous parts of her body, including her head, arms, abdomen, and buttocks.  The injuries that she simultaneously sustained to her thigh and genitals served to inform the jury of both the full extent of her injuries and of the complete facts surrounding Spark's criminal conduct, both of which the jury had a right to know and to evaluate as part of its responsibility as the factfinder.  At no point during the trial did the State intentionally elicit any evidence, or even imply, that a sexually-related offense had occurred.[4]

---

[4]Indeed, at the hearing outside of the jury's presence in which the trial court considered the admissibility of the evidence, the State confirmed that it "intend[ed] to discuss these [injuries] as physical injuries.  Don't intend to use anything about the term 'aggravated sexual assault' or 'sexual assault.'"

6

The evidence was also admissible to show that B.N.'s injuries were not sustained accidentally. *See* Tex. R. Evid. 404(b). Sparks elicited testimony from the physician who performed B.N.'s autopsy that her abdominal injuries could have been caused by children jumping on her abdomen. On redirect, however, the physician confirmed that the injuries to B.N.'s *genitals* could not have been caused by children jumping on her abdomen. Thus, the complained-of evidence was additionally admissible to demonstrate the absence of accident. *See id.*

For all of these reasons, we also hold that the probative value of the evidence that B.N. sustained injuries to her thigh and genitals was not substantially outweighed by the danger of unfair prejudice or any other rule-403 concern. *See* Tex. R. Evid. 403; *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (identifying balancing analysis). We overrule Sparks's second, third, and fourth issues.

In his first issue, Sparks argues that the trial court erred by denying his motion for a mistrial. The trial court granted a motion in limine at the outset of the trial regarding the evidence that B.N. had sustained injuries to her thigh and genitals. Before the trial court ruled that the evidence was admissible, Brittany gave the following testimony in response to the State's question asking her what Sparks had told her on the telephone when she was at the hospital:

> He said that they was trying to make it look like -- well, they were saying that he did it. *He told me that they told him that she had been raped*, and he said he told them they can take his DNA. And then he said, "They almost had me," and then he paused, and he was like, "They going to hang me for this." [Emphasis added.]

7

The prosecutor apologized to the trial court and explained that she had not intended to elicit Brittany's comments about rape. Sparks said that he did not want to ask for an instruction to disregard because it would have done nothing other than draw additional attention to the testimony, and he moved for a mistrial.

We review the trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.* When a defendant moves for a mistrial without first requesting an instruction to disregard, as occurred here, he will obtain reversal only if the error could not have been cured by an instruction to disregard. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004).

Considering Brittany's testimony and the circumstances surrounding it, we cannot conclude that it was "so clearly calculated to inflame the minds of the jury" or that it was "of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (stating that it is well settled that testimony referring to extraneous offenses can be rendered harmless by an instruction to disregard). Thus, contrary to Sparks's opinion at trial, Brittany's uninvited testimony was not so prejudicial that it could not have been cured by an instruction to disregard, had one been requested. *See id.* Moreover, as the

State points out, to the extent that Sparks thought Brittany's testimony violated the motion in limine, the evidence that was the subject of that order was admissible as same-transaction contextual evidence and to rebut Sparks's defensive theory of accident, as we already explained. We hold that the trial court did not abuse its discretion by denying Sparks's motion for a mistrial, and we overrule his first issue.

Sparks argues in his fifth issue that the trial court erred by not giving the jury a limiting instruction when the State elicited testimony that B.N. had sustained injuries to her thigh and genitals.[5] No instruction was required because the evidence was admissible as same-transaction contextual evidence. *See Devoe v. State,* 354 S.W.3d 457, 471 (Tex. Crim. App. 2011) ("This Court has held that a limiting instruction is not required when evidence is admitted as same-transaction contextual evidence."). We overrule Sparks's fifth issue.

Having overruled all of Sparks's issues, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 31, 2014

---

[5]The trial court included a limiting instruction in the jury charge on guilt.