PD-0190-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/30/2015 11:24:43 PM
Accepted 3/31/2015 5:02:41 PM
ABEL ACOSTA
CLERK

## NO. _____

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS
## AUSTIN, TEXAS

| | | |
|---|---|---|
| **ERIK SANTANA GUANCHE** | § | **DEFENDANT-APPELLANT** |
| | § | |
| **V.** | § | |
| | § | |
| **THE STATE OF TEXAS** | § | **PLAINTIFF-APPELLEE** |

---

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

## NO. 01-13-00851-CR
## IN THE COURT OF APPEALS FOR THE FIRST DISTRICT

---

## CAUSE NO. 1869024
## IN HARRIS COUNTY CRIMINAL COURT AT LAW NO. 7

**J. Ricardo Soliz and Associates, P.L.L.C.**

**Rick Soliz**
**Attorney at Law**
**Texas Bar Number 00785013**
**P.O. Box 4051**
**Houston, Texas 77210**
**713-228-1900**
**jrsoliz@att.net**

**PRO BONO ATTORNEY FOR APPELLANT**

FILED IN
COURT OF CRIMINAL APPEALS

March 31, 2015

ABEL ACOSTA, CLERK

# TABLE OF CONTENTS

Identity of Judge, Parties, and Counsel …………….. 3

Index of Authorities …………………. 3

Statutes and Rules …………………. 3

Statement Concerning Oral Argument …………………. 3

Statement of the Case ……………………………….. 4

Procedural History ……………………………….. 5

Grounds for Review ……………………………….. 6

Argument ……………………………….. 6

Statement of Fact ……………………………….. 6

Ground No. One ……………………………….. 9

Ground No. Two ……………………………….. 10

Conclusion and Prayer ……………………………….. 14

Certificate of Compliance ……………………………….. 14

Certificate of Service ……………………………….. 15

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 68.4(a), a complete list is provided below.

Trial Court Judge: Honorable Pam Derbyshire

Appellant: Erik Santana Guanche
Counsel for Appellant: Trial and Appeal:  Rick Soliz,
P.O. Box 4051, Houston, Texas  77210-4051

Appellee: State of Texas
Counsel for Appellee:
Jessica Akins, Assistant District Attorney on appeal
Brad Means, Assistant District Attorney at trial
1201 Franklin, Suite 600, Houston, Texas  77002

## INDEX OF AUTHORITIES

### STATUTES AND RULES

| | |
|---|---|
| Government Code Sec. 57.022 | 10, 12 |
| Government Code Sec. 57.049 | 10, 13 |
| Texas Penal Code Sec. 7.02. | 12 |
| Texas Rules of Civil Procedure 18b (b)(1) | 12 |

### CASES

| | |
|---|---|
| *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd) | 10 |
| *Kemp v. State*, 846 S.W.2d 289, 306 (Tex. Crim. App. 1992) | 10 |
| *Gaal v. State*, 332 S.W.3d 448, 453 (Tex. Crim. App. 2011) | 10 |

**STATEMENT CONCERNING ORAL ARGUMENT**

The appellant requests oral argument because of the importance of the issue presented concerning whether a sitting judge may disregard and violate Texas law with impunity in the interest of efficiency and to the detriment of the indigent or racial and ethnic minority defendants.

**TO THE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

Appellant herein, by and through his attorney, Rick Soliz**,** and pursuant to TEX. R. APP. P. 68 files this petition for discretionary review and in support thereof, would show the Court as follows:

Erik Santana Guanche**,** Appellant in the above entitled and numbered cause, respectfully requests that this court reverse the ruling, dated December 16, 2014, of the First Court of Appeals, thereby reversing the judgment in the trial court, and removing the Honorable Pam Derbyshire, Judge of Harris County Criminal Court Number Seven from all proceedings associated with this case including any hearings, trial, supervisory functions during any possible community supervision, and from retaining jurisdiction within 30 days after any plea bargain or incarceration that concludes this case.

# I.  STATEMENT OF THE CASE

Erik Santana Guanche**,** Appellant in the above entitled and numbered cause, filed a Motion to Recuse the Honorable Pam Derbyshire, Harris County Criminal Court Number Seven.  Such motion was "Denied without hearing" by the Honorable Olen Underwood, Presiding Judge of the Second Administrative Judicial Region of Texas.  A one page form ORDER was signed and submitted to the County Clerk of the Court and is contained in the Clerk's short record in this plea bargained case.  Unsubstantiated statements in the Order are contradicted by facts and statements in the body in the sworn Motion to Recuse.  A subsequent and timely filed Motion to Recuse the Administrative Judge from hearing a Motion for Reconsideration was ignored by the Administrative Judge.   It is also in the clerk's record.

## II. PROCEDURAL HISTORY

Appellant, represented by his pro bono attorney of record on appeal, pled guilty to the offense of driving while intoxicated on July 2, 2013. The trial court assessed punishment at 15 days confinement in the county jail.  A motion for new trial and notice of appeal were timely filed.  The court of appeals affirmed Appellant's conviction in an unpublished opinion issued on December 16, 2014.  A copy is

attached hereto. A motion for rehearing and motion for reconsideration en banc were filed and denied on January 15, 2015 and March 17, 2015 respectively.

This Court granted Appellant an extension of time until March 19, 2015, to file this petition and until March 30, 2015 to perfect such filing.

## III. GROUNDS FOR REVIEW

1. Whether the appellate court erred by refusing to recognize the trial court erred in refusing to recuse itself after multiple open court efforts by the court to have defense counsel violate Texas criminal law by interpreting without the required license, for a previous defendant before the court on issues of bail, and whether the Presiding Judge of the Administrative Region erred in denying the same Motion to Recuse and a subsequently filed Motion to Recuse the Administrative Judge**.**

2. Whether the appellate court erred in recognizing that appellant's due process rights were violated by appearing before a trial court that is openly hostile to his race, and that has personally violated Texas criminal law hundreds of times a year, for well over a decade, by promoting unlicensed language interpretation in formal court proceedings.

## IV. ARGUMENT

## A. STATEMENT OF FACTS

Harris County Criminal Court Number Seven utilizes illegal procedures regarding the interpretation of the Spanish foreign language for defendants brought

6

before the court. This has the effect of disproportionally affecting mostly indigent and minority defendants. It is a Class A misdemeanor criminal offense to interpret before the court without the appropriate license. For well over 10 years, in contravention of multiple laws and under the risk of creating perpetual criminal prosecutions, Harris County judges including Court Seven, have supervised and promoted illegal interpreting by both appointed and retained counsel, sheriff deputies of earlier administrations, assistant district attorneys, court staff, and anyone bilingual who happens to be around. Even bilingual judges themselves have interpreted during formal proceedings without a license. Many law violating actors, have since risen to other appointed and elected positions and continue to perpetuate these crimes. No one has been prosecuted or arrested. The courts have paid appointed attorneys extra public money to violate the law by interpreting without the approved licenses as well, and by supplementing and enhancing attorney income on pay vouchers for such illegal interpreting. Those appointed attorneys who refuse to interpret without a license run the very real risk of not being called upon again to earn pay in those courts while serving the indigent through additional appointments.

These facts and similar events affecting the indigent and racial minorities repeatedly occur in this Court and all 15 Harris County misdemeanor courts in spite

of *Tex. Code Crim. Pro.* Art. 38.30 requirements to provide an interpreter at County expense, Attorney General Opinions, the Texas Government Code, Fair Defense Act requirements (this judge is bound by Harris County's selected alternative plan that clearly states licensed interpreters are available 24 hours – this statement is false, but if it is not, such interpreters are rarely utilized even upon request), antitrust law, due process violations, State Bar and Judicial Conduct Committee ethical rules regarding effective assistance of counsel and violations regarding conflicts and violations of law, equal protection laws, the Americans with Disabilities Act, Civil Rights law under Title VI of the Civil Rights Act of 1964, conspiracy laws, potential appellate reversals, whistleblower laws and requirements under Harris County's own recent settlement agreement, after litigation, with the Texas Civil Rights Project.

Such settlement agreement requires this judge to provide interpreters upon request. Yet there has never been a uniform, formal system in place to utilize licensed and legal interpreters whether they are requested or not. In the rare circumstance an interpreter is requested and actually scheduled, it is only after requesting counsel is chastised, rebuked, threatened or otherwise ridiculed. By contrast, the 22 Harris County criminal District Courts in the same building currently have licensed interpreters available immediately and at all times for all Courts. Such plan was implemented after years of violating Texas law in most of those courts as

well, not out of a sense of justice, but because of appellate reversal(s).

Additionally, unlicensed interpreters are not sworn prior to interpreting as required. There are various reasons licensed interpreters are required, but immigrants in particular require them to ensure an understanding of, for example, the potential consequences of a guilty plea. It is too easy for an unlicensed, biased (for example, biased because of the want of additional court pay and future court appointments) interpreter to skim over or leave out altogether immigration consequences and warnings, even before the bench. In many instances, the court is clueless as to what occurred before the bench.

Finally, it goes without saying that these facts expose a highly hypocritical, paradoxical daily occurrence - criminal law violations, sponsored by the trial judge in open court in front of a police officer (bailiff) and representatives of the district attorney's office on every occurrence. And another oddity: the District Clerk's office resisted efforts to make sure the documents in this trial case were available on the internet to the public just like any other case.

## B.  GROUND FOR REVIEW NUMBER ONE

An order denying a motion to recuse is reviewed under an abuse-of-discretion standard. TEX. R. CIV. P. 18a(j)(1)(A); *see Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd). The court abuses its discretion if its ruling is outside the "zone of reasonable disagreement" or if it fails to apply proper guiding rules and principles. *Kemp v. State*, 846 S.W.2d 289, 306 (Tex. Crim. App. 1992); *Abdygapparova*, 243 S.W.3d at 197–98.

Texas Rule of Civil Procedure 18(b) provides that a judge must recuse if, among other things (1) the judge's impartiality might reasonably be questioned or (2) the judge has a personal bias or prejudice concerning the subject matter or a party. TEX. R. CIV. P. 18b(b)(1)–(2).  Under Rule 18(b)(1), a judge's impartiality might reasonably be questioned if she "harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Gaal v. State*, 332 S.W.3d 448, 453 (Tex. Crim. App. 2011); *see* TEX. R. CIV. P. 18b(b)(1).

This Texas Rule of Civil Procedure, which apply to Texas criminal case recusals, state the situations in which a trial judge should be recused from presiding over a particular case.  In this case, the trial judge should be recused from presiding because:  in light of the illegalities, the trial judge's impartiality may

10

reasonably be questioned, the trial judge has a personal bias and prejudice concerning all subject matter, when a Spanish speaker is involved, and the judge has no regard for Texas law, thus leading to a strong appearance of impropriety.

## C. GROUND FOR REVIEW NUMBER TWO

It is a due process violation of the Constitutions of this country and state to fail to provide a licensed interpreter. Such is because failing to do so violates Texas civil and criminal laws as well as federal laws. This judge has placed efficiency (more and faster guilty pleas), and cost (of a licensed interpreter) over sound law. How can a judge who does not know right from wrong, legal from illegal interpreting, or is indifferent to such, sit in judgment in a fair and impartial manner for any indigent or Spanish dominant, minority member of society. Many in both categories require interpreters, and the defendant here, a minority, has been exposed to this systematic illegal activity all around him and at every court setting and is at risk of related system deficiencies which by their nature discriminate against him, as a Hispanic. Who is it that requires interpreters the great majority of the time? It is Hispanics. As an aside, but a point that should be considered: not one of the 15 criminal county judges is Hispanic surnamed, none look or sound Hispanic and none are Hispanic males. When one compares that to the percentage of Hispanics and Hispanic males and the racial makeup of Harris County, it is an abysmal statistic…..one that "piles on" this defendant additional unfairness on top of the fact that the judges cannot seem to abide by existing law regarding Hispanic defendants and interpreters. In other words, it's hard enough to get a fair shake when none of the appellant's minority peers are sitting in judgment, but then much harder when

appellant cannot count on the system's units abiding by the mandatory laws that should guide them. Such law violations cause problems on so many levels. For example, how can certain justices or this district attorney's office be involved in appeals such as this and rule or argue impartially when they are or were once part of this very problem that has gone on for more than a decade and a half? They were and are, at minimum, witnesses to this daily crime and at most, participants in the crimes. The Texas Law of Parties clearly implicates this judge in every single illegal interpretation as if she had acted alone. Sec. 7.02. of the Penal Code states the following:  CRIMINAL RESPONSIBILITY FOR CONDUCT OF ANOTHER. (a)  A person is criminally responsible for an offense committed by the conduct of another if:

(1)  acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

(2)  acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense;  or

(3)  having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

Moreover, attached is a letter dated August 16, 2010 from the Civil Rights Division of the Department of Justice that explains this issue as well.

12

Additionally, in order to avoid criminal law penalties for many years, including well over a decade while this trial judge sat hearing cases, Texas Attorney General Opinions JC-0584 and JC-0579, required interpreters to maintain certain licenses. Texas Government Code (Chapter 57), which happens to be the essence of these Opinion(s), requires the interpreter maintain the appropriate interpreter license in order to be qualified to interpret for any Spanish speaker in any case. Finally, a Defendant in a trial court requires a licensed interpreter so that counsel may render effective assistance of counsel.

Along those lines and of note is the fact that thousands of guilty pleas from those accused, for many recent years, were completed illegally in open court in Harris County, and this court, without licensed interpreters in direct violation of the Texas Government Code and criminal law. Such violations were Class A misdemeanors on every occasion subject to jail time for up to one year. Not one interpreter or judge has been prosecuted for violations of criminal law during these years. In fact, some judges authorized extra payment to court appointed counsel in many instances to interpret and violate such criminal law and the Constitutions of this land. The judge of this court has violated multiple civil and criminal laws for many years. The motion to recuse should have been granted when counsel filed such on the basis, among other things, that he was being drawn into the daily criminal

conspiracy, against his will.

The Department of Assistive and Rehabilitative Services certifies Texas interpreters. Sec. 57.022 of the Government Code states: The department shall certify an applicant who passes the appropriate examination prescribed by the department and who possesses the other qualifications required by rules adopted under this subchapter.

(b) The executive commissioner of the Health and Human Services Commission by rule shall provide for:
> (1) the qualifications of certified court interpreters;
> (2) training programs for certified court interpreters each of which is managed by the department or by a public or private educational institution;
> (3) the administration of examinations;
> (4) the form for each certificate and procedures for renewal of a certificate;
> (5) the fees for training, examinations, initial certification, and certification renewal;
> (6) continuing education programs under this subchapter;
> (7) instructions for the compensation of a certified court interpreter and the designation of the party or entity responsible for payment of compensation; and
> (8) administrative sanctions enforceable by the department.

Sec. 57.049 of the Government Code states: PROHIBITED ACTS. A person may not advertise, represent to be, or act as a licensed court interpreter unless the person holds an appropriate license under this subchapter.

Sec. 57.050 states   (a) A person commits an offense if the person violates this subchapter or a rule adopted under this subchapter.  An offense under this subsection is a Class A misdemeanor.  And again, the Texas Law of Parties implicates the judge as if illegally interpreting herself.

Therefore, thousands of Class A misdemeanors have been committed in open court for years in Harris County.  Each court generally disposes of several cases per day that require a licensed interpreter.  This takes into consideration plea bargains only, and not all other formal proceedings before the bench, which also criminal violations.

Regarding the ruling from the Administrative Judge of the Region, his ruling as described in Appellant's "Motion For Reconsideration Of Denial of Defendant's Motion to Recuse Trial Judge Pam Derbyshire" that is part of the trial court's record, has absolutely has no rhyme or reason and does not apply to the facts in the original Motion to Recuse at all.  It is as if some form was used to try and apply boiler plate language to this case.  While appellant has no yearning to make efforts to police the judiciary, particularly since his camp is not being paid like every other person dealing with this document, something must be done since things have gotten completely out of hand when laws are flouted in open court daily by public servants on the public payroll.

**CONCLUSION AND PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** Appellant prays that this Court grant discretionary review, order full briefs and oral argument and reverse the opinion of court of appeals.

**CERTIFICATE OF COMPLIANCE**

I certify that the above document consists of about 3,121 words.

/S/_____
/S/ Rick Soliz

**CERTIFICATE OF SERVICE**

I certify that the above document was served on the State of Texas by delivering copies, to the Harris County District Attorney's Office, 1201 Franklin, 6th Floor, Houston, Texas 77002 and the State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711 on this 19th day of March 2015.

Respectfully submitted,
J. Ricardo Soliz and Assoc., P.L.L.C.
/S/_____
/S/ Rick Soliz,
T.B.N. 00785013
P.O. Box 4051
Houston, Texas   77210
713-228-1900
jrsoliz@att.net
Pro Bono Attorney for Appellant

16



August 16, 2010

Dear Chief Justice/State Court Administrator:

In the past decade, increasing numbers of state court systems have sought to improve their capacity to handle cases and other matters involving parties or witnesses who are limited English proficient (LEP). In some instances the progress has been laudable and reflects increased recognition that language access costs must be treated as essential to sound court management. However, the Department of Justice (DOJ) continues to encounter state court language access policies or practices that are inconsistent with federal civil rights requirements. Through this letter, DOJ intends to provide greater clarity regarding the requirement that courts receiving federal financial assistance provide meaningful access for LEP individuals.

Dispensing justice fairly, efficiently, and accurately is a cornerstone of the judiciary. Policies and practices that deny LEP persons meaningful access to the courts undermine that cornerstone. They may also place state courts in violation of long-standing civil rights requirements. Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d *et seq.* (Title VI), and the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 42 U.S.C. § 3789d(c) (Safe Streets Act), both prohibit national origin discrimination by recipients of federal financial assistance. Title VI and Safe Streets Act regulations further prohibit recipients from administering programs in a manner that has the effect of subjecting individuals to discrimination based on their national origin. *See* 28 C.F.R. §§ 42.104(b)(2), 42.203(e).

The Supreme Court has held that failing to take reasonable steps to ensure meaningful access for LEP persons is a form of national origin discrimination prohibited by Title VI regulations. *See Lau v. Nichols*, 414 U.S. 563 (1974). Executive Order 13166, which was issued in 2000, further emphasized the point by directing federal agencies to publish LEP guidance for their financial assistance recipients, consistent with initial general guidance from DOJ. *See* 65 Fed. Reg. 50,121 (Aug. 16, 2000). In 2002, DOJ issued final Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons. 67 Fed. Reg. 41,455 (June 18, 2002) (DOJ Guidance). The DOJ Guidance and subsequent technical assistance letters from the Civil Rights Division explained that court systems receiving federal financial assistance, either directly or indirectly, must provide meaningful access to LEP persons in order to comply with Title VI, the Safe Streets Act, and their implementing regulations. The federal requirement to provide language assistance to LEP individuals applies notwithstanding conflicting state or local laws or court rules.

Despite efforts to bring courts into compliance, some state court system policies and practices significantly and unreasonably impede, hinder, or restrict participation in court proceedings and access to court operations based upon a person's English language ability. Examples of particular concern include the following:

1. <u>Limiting the types of proceedings for which qualified interpreter services are provided by the court.</u> Some courts only provide competent interpreter assistance in limited categories of cases, such as in criminal, termination of parental rights, or domestic violence proceedings. DOJ, however, views access to *all* court proceedings as critical. The DOJ Guidance refers to the importance of meaningful access to courts and courtrooms, without distinguishing among civil, criminal, or administrative matters. *See* DOJ Guidance, 67 Fed. Reg. at 41,462. It states that "every effort should be taken to ensure competent interpretation for LEP individuals during *all* hearings, trials, and motions," *id.* at 41,471 (emphasis added), including administrative court proceedings. *Id.* at 41,459, n.5.

Courts should also provide language assistance to non-party LEP individuals whose presence or participation in a court matter is necessary or appropriate, including parents and guardians of minor victims of crime or of juveniles and family members involved in delinquency proceedings. Proceedings handled by officials such as magistrates, masters, commissioners, hearing officers, arbitrators, mediators, and other decision-makers should also include professional interpreter coverage. DOJ expects that meaningful access will be provided to LEP persons in all court and court-annexed proceedings, whether civil, criminal, or administrative including those presided over by non-judges.

2. <u>Charging interpreter costs to one or more parties.</u> Many courts that ostensibly provide qualified interpreters for covered court proceedings require or authorize one or more of the persons involved in the case to be charged with the cost of the interpreter. Although the rules or practices vary, and may exempt indigent parties, their common impact is either to subject some individuals to a surcharge based upon a party's or witness' English language proficiency, or to discourage parties from requesting or using a competent interpreter. Title VI and its regulations prohibit practices that have the effect of charging parties, impairing their participation in proceedings, or limiting presentation of witnesses based upon national origin. As such, the DOJ Guidance makes clear that court proceedings are among the most important activities conducted by recipients of federal funds, and emphasizes the need to provide interpretation free of cost. Courts that charge interpreter costs to the parties may be arranging for an interpreter's presence, but they are not "providing" the interpreter. DOJ expects that, when meaningful access requires interpretation, courts will provide interpreters at no cost to the persons involved.

3. <u>Restricting language services to courtrooms</u>. Some states provide language assistance only for courtroom proceedings, but the meaningful access requirement extends to court functions that are conducted outside the courtroom as well. Examples of such court-managed offices, operations, and programs can include information counters; intake or filing offices; cashiers; records rooms; sheriff's offices; probation and parole offices; alternative dispute resolution programs; *pro se* clinics; criminal diversion programs; anger management classes; detention facilities; and other similar offices, operations, and programs. Access to these points of public contact is essential to the fair administration of justice, especially for unrepresented LEP persons. DOJ expects courts to provide meaningful access for LEP persons to such court operated or managed points of public contact in the judicial process, whether the contact at issue occurs inside or outside the courtroom.

4. <u>Failing to ensure effective communication with court-appointed or supervised personnel</u>. Some recipient court systems have failed to ensure that LEP persons are able to communicate effectively with a variety of individuals involved in a case under a court appointment or order. Criminal defense counsel, child advocates or guardians *ad litem*, court psychologists, probation officers, doctors, trustees, and other such individuals who are employed, paid, or supervised by the courts, and who are required to communicate with LEP parties or other individuals as part of their case-related functions, must possess demonstrated bilingual skills or have support from professional interpreters. In order for a court to provide meaningful access to LEP persons, it must ensure language access in all such operations and encounters with professionals.

DOJ continues to interpret Title VI and the Title VI regulations to prohibit, in most circumstances, the practices described above. Nevertheless, DOJ has observed that some court systems continue to operate in apparent violation of federal law. Most court systems have long accepted their legal duty under the Americans with Disabilities Act (ADA) to provide auxiliary aids and services to persons with disabilities, and would not consciously engage in the practices highlighted in this letter in providing an accommodation to a person with a disability. While ADA and Title VI requirements are not the same, existing ADA plans and policy for sign language interpreting may provide an effective template for managing interpreting and translating needs for some state courts.

Language services expenses should be treated as a basic and essential operating expense, not as an ancillary cost. Court systems have many operating expenses – judges and staff, buildings, utilities, security, filing, data and records systems, insurance, research, and printing costs, to name a few. Court systems in every part of the country serve populations of LEP individuals and most jurisdictions, if not all, have encountered substantial increases in the number of LEP parties and witnesses and the diversity of languages they speak. Budgeting adequate funds to ensure language access is fundamental to the business of the courts.

We recognize that most state and local courts are struggling with unusual budgetary constraints that have slowed the pace of progress in this area. The DOJ Guidance acknowledges that recipients can consider the costs of the services and the resources available to the court as part of the determination of what language assistance is reasonably required in order to provide meaningful LEP access. *See id.* at 41,460. Fiscal pressures, however, do not provide an exemption from civil rights requirements. In considering a system's compliance with language access standards in light of limited resources, DOJ will consider all of the facts and circumstances of a particular court system. Factors to review may include, but are not limited to, the following:

- The extent to which current language access deficiencies reflect the impact of the fiscal crisis as demonstrated by previous success in providing meaningful access;
- The extent to which other essential court operations are being restricted or defunded;
- The extent to which the court system has secured additional revenues from fees, fines, grants, or other sources, and has increased efficiency through collaboration, technology, or other means;
- Whether the court system has adopted an implementation plan to move promptly towards full compliance; and
- The nature and significance of the adverse impact on LEP persons affected by the existing language access deficiencies.

DOJ acknowledges that it takes time to create systems that ensure competent interpretation in all court proceedings and to build a qualified interpreter corps. Yet nearly a decade has passed since the issuance of Executive Order 13166 and publication of initial general guidance clarifying language access requirements for recipients. Reasonable efforts by now should have resulted in significant and continuing improvements for all recipients. With this passage of time, the need to show progress in providing all LEP persons with meaningful access has increased. DOJ expects that courts that have done well will continue to make progress toward full compliance in policy and practice. At the same time, we expect that court recipients that are furthest behind will take significant steps in order to move promptly toward compliance.

The DOJ guidance encourages recipients to develop and maintain a periodically-updated written plan on language assistance for LEP persons as an appropriate and cost-effective means of documenting compliance and providing a framework for the provision of timely and reasonable language assistance. Such written plans can provide additional benefits to recipients' managers in the areas of training, administrating, planning, and budgeting. The DOJ Guidance goes on to note that these benefits should lead most recipients to document in a written LEP plan their language assistance services, and how staff and LEP persons can access those services. In court systems, we have found that meaningful access inside the courtroom is most effectively implemented in states that have adopted a court rule, statute, or administrative order providing for universal, free, and qualified court interpreting. In addition, state court systems that have strong leadership and a designated coordinator of language services in the office of the court administrator, and that have identified personnel in charge of ensuring language access in each courthouse, will more likely be able to provide effective and consistent language access for LEP

individuals. Enclosed, for illustrative purposes only, are copies of Administrative Order JB-06-3 of the Supreme Judicial Court of Maine, together with the September 2008 Memorandum of Understanding between that court and DOJ. Also enclosed for your information is a copy of "Chapter 5: Tips and Tools Specific to Courts" from DOJ, *Executive Order 13166 Limited English Proficiency Document: Tips and Tools from the Field* (2004).

The Office of Justice Programs provides Justice Assistance Grant funds to the states to be used for state and local initiatives, technical assistance, training, personnel, equipment, supplies, contractual support, and criminal justice information systems that will improve or enhance criminal justice programs including prosecution and court programs. Funding language services in the courts is a permissible use of these funds.

DOJ has an abiding interest in securing state and local court system compliance with the language access requirements of Title VI and the Safe Streets Act and will continue to review courts for compliance and to investigate complaints. The Civil Rights Division also welcomes requests for technical assistance from state courts and can provide training for court personnel. Should you have any questions, please contact Mark J. Kappelhoff, Acting Chief, Federal Coordination and Compliance Section (formally known as Coordination and Review Section) at (202) 307-2222.

Sincerely,

Thomas E. Perez
Assistant Attorney General

Enclosures



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00851-CR

_____

**ERIK SANTANA GUANCHE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 7**
**Harris County, Texas**
**Trial Court Case No. 1869024**

---

## MEMORANDUM OPINION

Pursuant to a plea agreement with the State, appellant Erik Santana Guanche pleaded guilty to a Class B misdemeanor DWI as a first offender. *See* TEX. PENAL CODE ANN. § 49.04 (West Supp. 2014). In accordance with the terms of the plea bargain, the trial court sentenced Guanche to 15 days in the Harris County Jail with

4 days' credit and imposed a $500 fine. The trial court certified that this is a plea bargain case, but that matters were raised by written motion filed and ruled on before trial from which Guanche had the right to appeal. Guanche appeals the denial of his motion to recuse the trial court judge, requesting that we reverse the judgment and the denial of the motion to recuse. We affirm.

## Background

Guanche was charged by information with Class B misdemeanor DWI as a first offender. Guanche was released on bond and, as a condition of his release, was ordered to install an ignition interlock device on his vehicle. After his bond supervision officer filed a violation report stating that Guanche had failed to pay administrative fees and tested positive for drug use, the trial court revoked Guanche's bail, raised it to $4,000, and amended the conditions of bail to make them stricter. Guanche's bond supervision officer later filed a second violation report stating that Guanche had (1) failed to pay administrative fees, (2) on April 15, 2013, Guanche's breath alcohol level was measured at 0.040, and (3) Guanche had attempted to bribe a urinalysis technician with $100. The trial court revoked Guanche's bail for a second time, raised it to $8,000, and amended the terms of bail to make them even stricter.

Guanche then filed a verified motion to recuse the trial court on the grounds that her "impartiality might be reasonably questioned, [she] has a personal bias or

2

prejudice concerning the subject matter, defense counsel or a party, or the judge has no regard for Texas law, and there is a strong appearance of impropriety." The ground for the motion was that the trial court had tried to "coerce" Guanche's counsel to interpret for his Spanish-speaking client in an unrelated matter. According to Guanche's counsel, he represented that client in a bond matter before the trial court, and when Guanche refused to interpret for his client, the trial court became upset, mocked counsel, and asked counsel why he had not made the request for an interpreter earlier. Guanche argued that "hundreds, if not thousands, of guilty pleas from those accused, for many recent years, were completed illegally in open court in Harris County, and this court, without licensed interpreters, in direct violation of the Texas Government Code and criminal law." Thus, Guanche argued, "the judge is not fit to hear this case regarding this Spanish surnamed defendant who has retained this same counsel in the current case."

The trial court declined to recuse herself and referred the motion to the Presiding Judge of the Second Administrative Judicial Region, Olen Underwood. Presiding Judge Underwood denied the motion. Guanche pleaded guilty before a different trial court judge and was sentenced in accordance with his plea agreement.

## Discussion

In his sole issue on appeal, Guanche urges us to reverse the judgment on the grounds that the trial court and Presiding Judge Underwood erred in denying his motion to recuse.

### A.    Standard of Review

We review an order denying a motion to recuse under an abuse-of-discretion standard. TEX. R. CIV. P. 18a(j)(1)(A); *see Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd). The court abuses its discretion if its ruling is outside the "zone of reasonable disagreement" or if it fails to apply proper guiding rules and principles. *Kemp v. State*, 846 S.W.2d 289, 306 (Tex. Crim. App. 1992); *Abdygapparova*, 243 S.W.3d at 197–98.

### B.    Applicable Law

Texas Rule of Civil Procedure 18(b) provides that a judge must recuse if, among other things (1) the judge's impartiality might reasonably be questioned or (2) the judge has a personal bias or prejudice concerning the subject matter or a party. TEX. R. CIV. P. 18b(b)(1)–(2). Under Rule 18(b)(1), a judge's impartiality might reasonably be questioned if she "harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Gaal v. State*, 332 S.W.3d 448, 453 (Tex. Crim. App. 2011); *see* TEX. R. CIV. P. 18b(b)(1). "Rule 18(b)(2) is more specific: It covers how the judge feels and

what the judge knows," such as when a judge has personally observed the conduct that led to a defendant's detention. *Gaal*, 332 S.W.3d at 453; *see* TEX. R. CIV. P. 18b(b)(2).

Recusal generally is not required when the judge is accused of a personal bias based solely on her judicial rulings, remarks or actions. *See Gaal*, 332 S.W.3d at 453–54. However, when the judge's remarks reveal an opinion based on an extra-judicial source (sometimes referred to as "personal" bias), recusal could be warranted. *See id.* at 453–54. In either case, if the comments or actions reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible," then recusal is required. *See id.* at 454 (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994)).

The party seeking recusal must establish that a reasonable person, knowing all the circumstances involved, would have doubts as to the impartiality of the judge. *See Kemp*, 846 S.W.2d at 305; *Abdygapparova*, 243 S.W.3d at 198. The evidence must be sufficient to overcome the presumption of judicial impartiality. *See Kemp*, 846 S.W.2d at 306; *Abdygapparova*, 243 S.W.3d at 198–99. Further, the bias must be "of such nature, and to such extent, as to deny the defendant due process of law." *Kemp*, 846 S.W.2d at 305; *see also Abdygapparova*, 243 S.W.3d at 199 (noting that this is a "high standard"). In order to meet the standards for a recusal motion, the motion, among other things, must include verified allegations

5

that "if proven, would be sufficient to justify recusal . . . ." TEX. R. CIV. P. 18a(a)(4)(C).

## C.    Analysis

On appeal, Guanche argues that the trial court violated Texas Code of Criminal Procedure article 38.30, the Texas and U.S. Constitutions, various Texas and federal statutes and common law doctrines, ethics rules, attorney general opinions, Harris County's "settlement agreement . . . with the Texas Civil Rights Project," and "potential appellate reversals." App. Br. 6–7. He does not specify how any of these were violated, but the gravamen of his complaint is that the trial court violated Texas law in an unrelated proceeding by trying to coerce Guanche's counsel to interpret for his Spanish-speaking client in that case. In his point of error, he asserts that "[t]he trial court erred in refusing to recuse itself after multiple open court efforts by the court to have defense counsel violate Texas criminal law by interpreting for the defendant, before the court, on issues of bail, without the required license; and the Presiding Judge of the Administrative Region erred in denying the related Motion to Recuse." We reject Guanche's argument that the trial court erred in refusing to recuse and that Presiding Judge Underwood abused his discretion in denying Guanche's motion to recuse.

Guanche's motion alleged that the trial court was required to recuse herself in his case because he has a Spanish surname. However, Guanche did not connect

6

the allegations in his motion regarding the trial court's alleged remarks and actions with respect to an interpreter in the unrelated case to anything in his own case. On appeal, he argues that failure to provide a licensed interpreter is a due process violation. But although he alleged in his motion to recuse that recusal was required because he had a Spanish surname, he did not represent that he was not fluent in English or ever required, let alone had been denied, the assistance of an interpreter. In short, even if the trial court had illegally denied a Spanish-speaking defendant the use of an interpreter in another case, the mere fact that Guanche has a Spanish surname does not support a claim that the trial court was biased against him or could not impartially judge his case. Thus, he alleged nothing to show that the trial court "harbor[ed] an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging [his] dispute." *Gaal*, 332 S.W.3d at 453 (judge's impartiality might reasonably be questioned "*only if* it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute") (emphasis added). Likewise, his allegations do not demonstrate bias "of such nature, and to such extent, as to deny [him] due process of law," because they do not suggest that the trial court had an opinion about the merits of Guanche's case that stemmed from an improper source. *Kemp*, 846 S.W.2d at 305–06 (for alleged bias to properly form basis for recusal, it "must stem from an extrajudicial source and result in an opinion on the merits on

7

some basis other than what the judge learned from his participation in the case"). Thus, his motion did not contain facts that "if proven, would be sufficient to justify recusal." TEX. R. CIV. P. 18a(a)(4)(c).  Accordingly, we hold that the trial court did not err in refusing to recuse and that Presiding Judge Underwood did not abuse his discretion in denying the motion to recuse.  *See* TEX. R. CIV. P. 18a(j)(1)(A); *Kemp*, 846 S.W.2d at 306.

We overrule Guanche's sole point of error.

## Conclusion

We affirm the judgment of the trial court.


Justice Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish.  Tex. R. App. P. 47.2(b).